### FITZGERALD v. LANGLEY MFG. CO.

1. EVIDENCE—Allegation of negligence in faulty allignment of shaft will not support evidence as to defective condition of shifting rods to move belt from one pulley to another.
2. IBID.—EXPERT—DISCRETION.—It is for the Judge to say if the question of inquiry is one upon which expert evidence is permissible and whether witness has necessary qualifications, and his action will not be reversed except for abuse of discretion. Here held that the effect of a belt automatically shifting from a loose to a tight pulley is a matter of common sense.

Before J. E. McDONALD, special Judge, Aiken.    Affirmed.

Action by T. E. Fitzgerald against Langley Manufacturing Co. From judgment for defendant plaintiff appeals.

*Messrs. Croft & Salley* and *H. C. Hammond,* for appellant, cite: *Effect of what other well regulated companies do*: Lob. on M. & S., secs. 53, 112; 107 U. S., 454; 12 L. R. A, 232; 63 U. S., 157; 60 S. C., 153. *As to admissibility of expert evidence:* 12 Ency., 2 ed., 423, 439; Law. on Ex. Ev., 73; 10 How. P. R., 289; 69 S. C., 104; Lob. on M & S., 2286, 2288; 63 N. Y. Supp., 44; 34 N. E., 84; 55 S. C., 339; 56 Fed. R., 994; 12 Ency., 2 ed., 426, 427; 59 S. C., 315; 48 A. S. R., 114.

*Messrs. Hendersons,* contra, cite: *As to assumption of risk by servant from defective machinery:* 21 S. C., 541; 20 Ency., 2 ed., 124; 61 S. C., 478; 66 S. C., 208. *What is contributory negligence:* 56 S. C., 91; 68 S. C., 222; 59 S. C., 322. *What is subject of expert evidence?* 59 S. C., 314; 117 Mass., 122; 12 Ency., 461; 1 Elliott on Ev., sec. 672; 97 N. Y., 507; 60 S. C., 70. *Refusal to permit expert evidence is reversible only in abuse of discretion:* Elliott on Ev., 1036, 1037; 72 S. C., 421; 60 S. C., 153; 70 S. C., 478.

April 18, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The plaintiff, a machinist in the employ of the defendant company, was injured while operating an iron planer so as to require amputation of the left hand, and brought this action for damages, which resulted in a verdict and judgment for defendant. The manner of the injury and the failure of duty on the part of the defendant is thus alleged in the complaint:

"On April 4, 1903, while engaged in the line of his duty planing down a piece of iron to be used on a beeder cover in defendant's mill, it became necessary for him to bolt said piece of iron tightly to the bed of the planer by screwing down a clamp bolt attached to the planer for that purpose. And the plaintiff further alleges in order to accomplish fastening said piece of iron securely, he placed a wrench used for that purpose upon the clamp bolt and proceeded to screw down said bolt, and while in this position with his left hand upon said wrench, because of the negligence and carelessness of the defendant and its servants in failing to repair and properly construct said planer and the appliances therewith connected, and to keep the same in a safe condition for its employees as was its duty to do, the counter-shaft which derived the power to run said planer from the main mill shafting, by means of belting, became out of alignment with the said mill shafting and while the plaintiff was in the position above described, without any fault on his part, and without his knowledge and without warning, because of the negligence and carelessness of the defendant aforesaid, the belt running from the mill shafting to the loose pulley on the counter-shaft automatically shifted on to the fixed pulley thereon, thereby starting the planer in motion, causing the bed of the same to move forward quickly and catch the wrist of the plaintiff's left arm between the nut on the clamp bolt and the cross beam on the planer and to crush and lacerate his arm to such an extent and manner as to cause a total loss of his left hand."

It will be observed that the particular act of negligence alleged was the failure of the defendant to have the counter-shaft properly aligned with the main shaft, thereby causing the belt to shift automatically from the loose pulley to the tight pulley on the counter-shaft and so put the machine in motion. This prepares us to consider plaintiff's fifth exception, as follows:

"Because his Honor erred in refusing to allow the plaintiff to answer the questions hereinafter complained of, as follows: 'Q. Have you ever worked in any other mill besides the Langley Mill? A. Yes, in the Sibley Mills, King Mill, Enterprise Mill, Georgia Iron Works. Q. Have you seen these shifting rods used in these mills for shifting a belt from the loose to a tight pulley and *vice versa?*' It is submitted that what other well regulated mills, under like circumstances, do, is competent evidence bearing on the question of what is ordinary and reasonable care, and that the same should have been allowed to go to the jury along with the other evidence and that his Honor erred in refusing to allow the plaintiff to answer such questions."

While the practice of other well regulated companies in the same business is not a conclusive test, yet such practice may be given in evidence on the question whether there was negligence in the particular alleged. *Lowrimore* v. *Palmer Manufacturing Co.,* 60 S. C., 168, 38 S. E., 430; *Bodie* v. *Railway,* 61 S. C., 488, 39 S. E., 115. But the difficulty in appellant's way is that the complaint did not allege negligence with respect to the shifting rods, but alleged a faulty alignment between the main and counter-shafts as the cause of the injury. Hence, the testimony proposed was irrelevant to the issue in the case and was properly excluded.

The sixth exception complains of error in the Court's ruling excluding the testimony of the witness M. F. Berry, as shown in this extract from the case: "Q. Have you ever had any experience with machinery? A. I have had with cotton gins and that kind of machinery. Q. Have you ever had any experience with pulleys and

belting?   A. Yes, I have set up those machines and run them.
Q. From your experience in the mill business, if a belting
running on a loose pulley automatically shifts from the loose
pulley on to a tight pulley, in your mind what would that indi-
cate?

"Mr. Henderson: We object.   That is not a matter of
science, it is a matter of common sense for the jury to ascer-
tain.

"The Court: My view of it is that it is a matter of com-
mon knowledge.   It seems to me a man with ordinary com-
mon sense ought to know that if it shifts that way it is not
proper.   It is more a matter of common knowledge and
experience ¨

It is contended that the testimony was competent as the
opinion of an expert.   This Court will not reverse the judg-
ment of the Circuit Court for excluding expert testimony
unless it is convinced that the error, if any, was harmful.
It is for the trial Court to decide whether the question under
inquiry is one upon which expert opinion is proper and
whether the witness has the necessary qualifications.   2
Elliott Ev., sec. 1036.   The trial Court's conclusion on these
matters will not be disturbed except in a case of abuse of
discretion, which we do not find in this case.   "Opinion evi-
dence is based on necessity and is not admissible as a general
rule when the facts can be reproduced before the jury in
such a way as to show the condition of things upon which
the opinion of the witness was based."   *Easler* v. *Ry. Co.,*
59 S. C., 311, 315, 39 S. E., 938.   It is a cardinal rule that
the evidence must be of such a character as not to fall within
the range of common experience and observation, and, there-
fore, not to be intelligible to jurors without the aid of opin-
ion.   12 Ency. Law, 458, and cases cited.

The plaintiff was fortunate in securing from the trial
Judge an opinion such as he desired from the witness, and
doubtless it went to the jury with more force than if given
by the witness.

The foregoing are the only exceptions that were argued by appellant, and the Court does not feel impelled to consider what counsel do not deem of sufficient importance to discuss.

The judgment of the Circuit Court is affirmed.