17427

Ruby L. JENKINS, Respondent, v. E. L. LONG MOTOR LINES, Inc., Appellant

(103 S. E. (2d) 523)

*Messrs. Leatherwood, Walker, Todd & Mann,* of Green-
ville, *for Appellant,*

*Messrs. Love, Thornton & Arnold,* of Greenville, *for
Respondent,*

*Messrs. Leatherwood, Walker, Todd & Mann,* of Greenville, *for Appellant,*

May 19, 1958.

TAYLOR, Justice.

This appeal arises out of an action brought by respondent, Ruby L. Jenkins, against E. L. Long Motor Lines, Inc., for personal injuries alleged to have arisen out of a collision between the car she was driving and a tractor-trailer truck of appellant. The jury's verdict was for $30,000.00 actual damages and $5,000.00 punitive damages, and this appeal presents three questions as set forth in appellant's brief, as follows:

"1. Where Plaintiff contended the Tractor-Trailer Unit was being driven at an excessive rate of speed causing it to overturn and skid on its side down the highway towards plaintiff, did the trial Judge err in excluding the testimony of an expert repairman that in his opinion, based upon an examination of the vehicle involved, that it did not skid on its side as contended?

"2. Is a Motor Truck Carrier liable for damages sustained as a result of improper loading of the vehicle where the loading was done by the shipper, and the defective loading was latent and concealed?

"3. Did the Trial Judge err in holding as a matter of law that defendant had not made a reasonable inspection of the load when it picked up the trailer at the shipper's plant?"

Appellant's tractor and trailer, having been loaded at the Southern Bleachery with 18 tons of cloth in bales and boxes,

was traveling west along that portion of Highway 291 known in Greenville as the By-Pass. Rounding a curve to its right, it crossed over to the left-hand side of the road, turned over on its left side and came to rest partly on the left-hand portion of the shoulder, blocking the left portion of the highway. Respondent was driving east meeting the oncoming truck when her car was struck by appellant's vehicle and knocked from the road coming to rest at the bottom of an 18-foot embankment leaving no marks on the embankment or around the wheels of her car, from which it might be concluded that her car was struck with such force that it traveled from the point of impact to where it came to rest without touching the ground. Respondent testified with respect to speed: "* * * He was flying. I have no idea how fast he was going but he was going awfully fast." A decided mark was found in the pavement some 11 or 12 steps long which terminated at the point where the left end of appellant's front bumper came to rest. Respondent also testified that she saw the trailer turn over and slide but that she did not see the tractor turn over. In an effort to meet this line of testimony, appellant asked one of its witnesses, K. C. Mooney, a repairman, whether or not in his opinion the trailer slid along the pavement for any considerable distance. The Trial Judge in his discretion refused to let the witness give his opinion but stated that he could testify to the condition of the trailer and any facts known to him but could not give an opinion as to whether it slid a considerable distance on its side.

After the witness had testified that he had been employed by Cato Trailer Service for 6 1/2 years repairing trailers, etc., and before that by Fruehauf Trailer Service as Parts Manager and Assistant Service Manager and as such he had assisted in repairing many trailers and that he had observed the trailer involved, counsel for respondent objected to the witness giving his conclusions as to the trailer having slid on its side after turning over and the objection was sustained. Pertinent parts of the record on this question disclose the following:

"Q. I will ask you whether or not the left side of this Southeastern Van Lines Trailer that was involved in this accident to your observation gave any indication of having slid along the pavement for any considerable distance.

"Mr. Arnold: I don't believe he can testify as to that, Your Honor.

"The Court: He can tell what condition it was in, Mr. Todd.

"Mr. Todd: I submit he's qualified to give an opinion as to that.

"The Court: He can tell what the condition was, but I will not permit him to speculate.

"Mr. Todd: Will you permit me to get it in the record?

"The Court: Go ahead, Gentlemen, you are excused for a minute.

\* \* \*

"Mr. Todd: Based upon your experience repairing numerous wrecks do you have any opinion as to what caused those indentions?

"The Court: I have already ruled on that, Mr. Todd.

"Mr. Todd: Just answer yes or no. Do you have an opinion as to what caused those indentions?

"Mr. Arnold: Your Honor has already ruled it wasn't competent.

"Mr. Todd: I can ask the question.

"Mr. Arnold: Your Honor has already ruled.

"Mr. Todd: I can ask him the question; if his Honor rules it isn't competent, he can't answer it.

"The Court: Well, you've asked him the question, and I ruled he can't answer it.

"Mr. Todd: Very well.

"A. And also the trailer in its upright position, the roof was standing in a bulged-out condition, raised up higher than normal, and the front roofcram was broken loose from the front end area of the body, and there was an indentation in the left corner.

"Q. Let me ask you, is there a railing or a molding going around that trailer? A. Yes, sir, there is a molding in the center and a molding in the top edge.

"Q. I will ask you what that molding is made of. A. Steel. Lightgauge steel.

"Q. Can you tell us what gauge it was? A. Yes, sir, I can. It was 26-gauge steel.

"Q. Is that light or heavy gauge steel? A. Very light.

"Q. And is that the molding around the middle of the trailer? A. That's the moldings themselves, yes, sir.

"Q. All right. What about the molding around the top, what gauge is that? A. 16-gauge.

"Q. Is that lighter than 20 or heavier than 20? A. Heavier. The 20-gauge is the panel.

"Q. All right. What was the condition of that molding when you saw that trailer in your shop? A. It was worn slightly from abrasion.

"Q. Was it intact? A. Yes, sir. This area across the roof immediately behind the front cam on the right side was broken loose for some reason.

"Q. That would be—as shown in Exhibit D—this area right here. A. It was pulled loose.

"Mr. Arnold: I don't think he can testify it was pulled loose.

"Mr. Todd: It seems to me he could testify to that.

"The Court: Mr. Todd, he wasn't there. He can't say whether it was pulled or pushed.

"Mr. Todd: I certainly would think he could say from the physical evidence * * *

"The Court: Well, I ruled that way, Mr. Todd, and that's it.

"Mr. Todd: That was separated. A. This was separated.

"Q. All right. Just beyond that, was it separated in a different manner? A. Yes, sir.

"Q. All right."

Appellant's witness stated he was a repairman and that he had considerable experience as such, but this did not qualify him in the opinion of the trial Judge as an expert on abrasives. A hard clay road may have a different effect upon steel than an asphalt one and that a different effect from a tar and gravel one and that different from a concrete one. The witness was permitted to testify as to his experience in repairing trailers and what condition this one was in when he inspected it. The facts were testified to and they were not of such character as not to fall within the range of common experience and observation. Whether or not the sides of the trailer showed signs of having skidded in such a way as to wear holes in the molding or scratch the paint from the side of the trailer or indentations from some direct blow or force appears to us to fall within the reach of common experience and observation and is less confusing and less susceptible to error than opinion evidence which should be relied upon only when the evidence adduced is found to be unintelligible to juries without the aid of an opinion. There was no showing that the condition of the trailer presented an unusual situation or required any special skill or knowledge; further, the proffered testimony was cumulative as there was other evidence as to both negligence and speed of the truck. It was for the trial Court to say whether the inquiry was one upon which expert testimony was proper, and its ruling thereon will not be disturbed unless it appears that there has been an abuse of discretion; and we find no such abuse here.

The Court used the following language in *McCown v. Muldrow,* 91 S. C. 523, 74 S. E. 386, 391, which is apropos here:

" '* * * This court will not reverse the judgment of the circuit court for excluding expert testimony, unless it is convinced that the error, if any, was harmful. It is for the trial court to decide whether the question under inquiry is one upon which expert opinion is proper, and whether the witness has the necessary qualifications. 2 Elliott Ev.

§ 1036. The trial court's conclusion on these matters will not be disturbed except in a case of abuse of discretion, which we do not find in this case. "Opinion evidence is based on necessity and is not admissible as a general rule when the facts can be reproduced before the jury, in such a way as to show the condition of things, upon which the opinion of the witness was based." *Easler v. [Southern]* Railway *Co.,* 59 S. C. 311, 315, 37 S. E. 938. It is a cardinal rule, that the evidence must be of such a character as not to fall within the range of common experience and observation, and therefore not to be intelligible to jurors without the aid of opinion. 12 Ency. Law, 458, and cases cited.' [*Fitzgerald v. Langley Mfg. Co.,* 74 S. C. 232, 54 S. E. 373]."

Respondent alleged in her specifications of negligence, among other things, that the vehicle was improperly loaded in such a manner as to permit the load to shift. This allegation, along with the others, was denied by appellant. Upon trial, however, appellant sought to establish the cause of the overturning of its vehicle and resulting collision as being the shifting of the cargo which was the result of improper loading on the part of the shipper. Respondent contended that even though the cargo was improperly loaded by the shipper, Southern Bleachery, it nevertheless was the responsibility of the carrier to make a reasonable inspection of the load about to be transported with the view to ascertaining that it was properly distributed and secured in such a way as to prevent shifting. With respect thereto the trial Judge charged the jury as follows:

"Now, in addition to the Statutes that I have read to you, I call your attention to certain provisions of the Rules and Regulations of the South Carolina Public Service Commission, beginning on page 769 of Volume 7 of the 1952 Code of Laws: Every motor carrier and his or its officers, agents, employees and representatives concerned with the transportation of persons or property by motor vehicle shall comply with the following regulations and shall become conversant therewith: Section 209, 2.09 on page 770 provides under

sub-section 2.091: The load on every motor vehicle transporting property shall be properly distributed, and if necessary, secured, in order to prevent unsafe shifting of the load or unsafe operation of the vehicle. Sub-section 2.092 provides: No motor vehicle shall be driven unless the driver thereof shall have satisfied himself that the tailboard or tailgate, tarpaulins, spare tires, and all means of fastening the load are securely in place.

"I charge you further, Mr. Foreman and Gentlemen, that the Rules and Regulations that I have just read you have the full force and effect of Statutory Law. And I interpret to you that under such Rules and Regulations a common carrier by motor vehicle owes to the traveling public; that is, other persons using the highways of this State, the duty of making a reasonable inspection to see that any load about to be transported is properly distributed to prevent unsafe shifting and that the load is securely in place before undertaking to transport such upon the highways of this State and that such is a nondelegable duty."

The following request to charge by appellant was denied:

"If the jury finds from the evidence in this case that the shipper assumed the responsibility of loading the van involved in this accident, then the carrier is not liable for defective loading which is latent and concealed and cannot be discovered by the carrier by virtue of ordinary observation or the exercise of reasonable and due care in inspecting the load."

Rule 2.01 of the South Carolina Public Service Commission found at Page 769, Volume 7, Code of Laws of South Carolina 1952, appears as follows:

"Compliance required. Every motor carrier and his or its officers, agents, employees, and representatives concerned with the transportation of persons or property by motor vehicle shall comply with the following regulations and shall become conversant therewith."

Subsection 2.091 of such Rules provides as follows:

"Distribution and Securing of Load.—The load on every motor vehicle transporting property shall be properly distributed, and if necessary, secured, in order to prevent unsafe shifting the load or unsafe operation of the vehicle."

Subsection 2.092 thereof provides:

"Fastenings Secure.—No motor vehicle shall be driven unless the driver thereof shall have satisfied himself that the tailboard or tailgate, tarpaulins, spare tires, and all means of fastening the load are securely in place."

It was the duty of Appellant to make reasonable inspection to see that the load was properly distributed and if necessary secured in order to prevent unsafe shifting of the load; and if it knew or in the exercise of ordinary care should have known that the load was not in condition to be safely hauled on the highway, it assumed the risk of such damage as might be occasioned thereby. *Hicklin v. Jeff Hunt Machinery Co.,* 226 S. C. 484, 85 S. E. (2d) 739. This question must therefore be resolved against Appellant's contention.

The trial Judge also charged "that the evidence in this case establishes that there was not such a reasonable inspection of the load about to be transported as is contemplated by such law." The following testimony of the driver of Appellant's truck is pertinent upon this question:

"Q. All right, were you able, when you got out of your spot, to get a clear look at your load? A. No, sir, there wasn't sufficient light.

"Q. From what you could see, what appeared to be the condition of your load as you could observe it? There under those conditions. A. It seemed to be loaded to the top.

\* \* \*

"Q. And you went out there this Tuesday night to pick up this trailer about 7:30? A. I did.

"Q. And there were lights on there? A. There were, sir, on the dock.

"Q. You didn't go stand on the dock and look in the trailer. A. No, sir, we couldn't get on the dock.

\* \* \*

"Q. There were steps leading up to that dock. A. Down at the end where we pick up our bills.

\* \* \*

"Q. You could have asked him to let you walk up on the dock and look at your load. A. I could but I could only have looked at it from the back.

"Q. I understand you could only look at it from the back but there were lights there. Weren't there? A. Very few.

"Q. Well, there were lights out there weren't there? A. Yes, sir.

"Q. You didn't have a flashlight in your truck? A. No, sir.

"Q. You didn't have a flashlight in your truck? A. No, sir, I did not.

"Q. You had fuses didn't you? A. Yes, sir.

"Q. That would make a light wouldn't it? A. It would.

"Q. So you pulled out there and closed your doors and just looked up at the top and started off. A. I just looked at my load from the rear.

"Q. Just looked at it from the rear. A. I did.

"Q. Just a casual glance at your load. A. No, sir, I looked at it.

"Q. Well, that's what I say, just a casual glance, you didn't climb up in it. A. No, sir, I didn't climb up in it.

"Q. Just took a casual glance, isn't that true? Yes, sir. And then you pulled on out. A. I did, sir."

From the foregoing testimony, it is apparent that the driver made little or no effort to inspect his cargo with a view to seeing that it was properly loaded and fastened in order to prevent shifting or in anywise comply with applicable statutes or rules of the Public Service Commission regarding same and that the Court committed no

error in instructing the jury that there was a lack of evidence in this case that Appellant had made a reasonable inspection of the load to be transported.

We are of opinion that all exceptions should be dismissed and the judgment appealed from affirmed, and it is so ordered.

Affirmed.

STUKES, C. J., and LEGGE and Moss, JJ., concur.

OXNER, J., concurs in result.