2285

Jim Curtis GOODING, Appellant v. ST. FRANCIS XAVIER HOSPITAL and Judith Hood, M.D., Respondents.

(454 S.E. (2d) 328)

Court of Appeals

*James H. Moss* and *H. Fred Kuhn, Jr.*, both of *Moss & Kuhn*, Beaufort, *for appellant.*

*M. Dawes Cooke, Jr.*, of Barnwell, *Whaley, Patterson & Helms*, and *Elliott T. Halio*, of *Halio & Halio*, Charleston, *for respondents.*

Submitted Oct. 4, 1994.

Decided Jan. 9, 1995; Reh. Den. Feb. 10, 1995.

CONNOR, Judge:

Jim Curtis Gooding brought this medical malpractice action against St. Francis Xavier Hospital and Dr. Judith Hood, anesthesiologist, after his two front teeth were chipped during surgery at the hospital. The jury returned a verdict for the defense. Gooding appeals, arguing the court erred in excluding his expert witness. We reverse and remand for a new trial.

## I. Exclusion of Expert

At trial Gooding maintained Dr. Hood and St. Francis caused his injuries by improperly intubating or extubating him. He called Ralph Sorensen, an Emergency Room Technician (EMT), to testify about the proper way to intubate a patient. Hood and St. Francis objected to Sorensen's qualifica-

tions. They specifically argued, "that if the plaintiff is going to introduce expert testimony, it has to be a board certified anesthesiologist, or at least an anesthesiologist." The trial judge sustained the objection, stating:

> The Court: The Court is of the opinion that the necessary requirement for expert testimony, and particularly in malpractice cases, is of such a nature that the witness must have special expertise by way of training to compare with that of the physician who is defending the charges.
>
> In this case, even though the witness is somewhat trained in the mechanics of this medical assistance, he is not a medical doctor; he does not have the medical expertise required to testify under the circumstances of this case. . . .

Thereafter the jury returned a verdict for Hood and St. Francis.

In medical malpractice actions, the plaintiff must establish by expert testimony both the required standard of care and the defendant's failure to conform to the standard, unless the subject matter lies within the ambit of common knowledge and experience so that no special learning is needed to evaluate the defendant's conduct. *Pederson v. Gould*, 288 S.C. 141, 341 S.E. (2d) 633 (1986); *Jernigan v. King*, 312 S.C. 331, 440 S.E. (2d) 379 (Ct. App. 1993); *Botehlo v. Bycura*, 282 S.C. 578, 320 S.E. (2d) 59 (Ct. App. 1984). Expert testimony is also generally required to establish proximate cause in a medical malpractice case. *Bramlette v. Charter-Medical-Columbia*, 302 S.C. 68, 393 S.E. (2d) 914 (1990). Here, however, Gooding and the respondents are in agreement on the standard of care regarding intubation. Thus, the question presented here is not whether the chipping of Gooding's front teeth is within the standard of care for intubation procedures. Rather, the narrow issue on appeal is whether Gooding should have been allowed to present Sorensen, an intubation expert, to testify about proper intubation procedures in an effort to show circumstantially that, because teeth are easily chipped during intubation, his teeth were most probable chipped by Dr. Hood during this procedure. All of the medical care providers denied having chipped the teeth and

denied having any knowledge as to when or how they were chipped. Therefore, Gooding was left with only circumstantial evidence to demonstrate to the jury when and by whom they were most likely chipped.

A trial court's ruling on the admission of evidence will not be disturbed on appeal absent a clear abuse of discretion. *Hoeffner v. The Citadel,* — S.C. —, 429 S.E. (2d) 190 (1993). We have held the following standard should apply in determining the competency of an expert:

> To be competent as an expert, a witness must have acquired by reason of study or experience or both such knowledge and skill in a business, profession, or science that he is better qualified than the jury to form an opinion on the *particular subject* of his testimony. (Emphasis ours.)

*Botehlo v. Bycura,* 282 S.C. 578, 586, 320 S.E. (2d) 59, 64 (Ct. App. 1984). Furthermore, the fact that an expert is not a specialist in the particular field of medicine involved affects the weight of the expert's testimony, but affords no basic for completely rejecting it. *Bonaparte v. Floyd,* 291 S.C. 427, 354 S.E. (2d) 40 (Ct. App. 1987). It is not even necessary that a witness with medical training and experience be regularly licensed to practice medicine to qualify as an expert. *State v. Merriman,* 34 S.C. 16, 12 S.E. 619 (1891). An expert is not limited to any class of persons acting professionally. The test is a relative one that is dependent on the particular witness's reference to the subject. *Memorial Hospital of Alamance County, Inc. v. Brown,* 50 N.C. App. 526, 274 S.E. (2d) 277 (1981), cited with approval in *Botehlo v. Bycura,* 282 S.C. 578, 320 S.E. (2d) 59 (Ct. App. 1984).

Moreover, witnesses other than doctors may testify against doctors so long as they have some expertise on the matter in dispute. *See Daniels v. Bernard,* 270 S.C. 51, 240 S.E. (2d) 518 (1978) (chiropractor held competent in a personal injury action to interpret x-rays); *Howle v. PYA Monarch, Inc.,* 288 S.C. 586, 344 S.E. (2d) 157 (Ct. App. 1986.) (psychologist allowed to give expert opinion testimony concerning diagnosis, prognosis, and causation of plaintiff's mental and emotional condition); see also *Averet v. McCormick,* 246 Ga. 401, 271 S.E. (2d) 832 (1980), cited with approval in

*Botehlo v. Bycura,* 282 S.C. 578, 320 S.E. (2d) 59, 64 (Ct. App. 1984), (nurse held competent to testify against a physician in a medical malpractice action as to the standard of care for keeping a needle used to draw blood sterile). Conversely, our Supreme Court has held that doctors may testify against medical support personnel in appropriate cases. In *McMillan v. Durant,* 312 S.C. 200, 203, 439 S.E. (2d) 829, 832 (1993), a neurosurgeon was "amply qualified" to render an opinion in the field of nursing where his credentials included having "professional interaction with a multitude of various nursing staffs" and having taught nursing courses.

The facts concerning the expert's qualifications here are analogous to those in *State v. Myers,* 301 S.C. 251, 391 S.E. (2d) 551 (1990). In that case, the Supreme Court held the trial court erred in refusing to qualify a defense expert in a blood splatter patterns and their interpretation. The expert had been a forensic science investigator for eight years. She had attended approximately one hundred crime scenes. She had also assisted pathologists with one thousand or more autopsies by collecting evidence related to the body. She had attended a one-week seminar on the characteristics of blood stain evidence and had never testified in court. In reversing the trial judge, the Supreme Court emphasized it had in prior opinions "made it clear that, generally, defects in the amount and quality of education or experience go to the weight to be accorded the expert's testimony and not its admissibility." *Id.* at 256, 391 S.E. (2d) at 554. The scope of the trial judge's discretion as to admissibility of expert witness testimony is the same whether the context is criminal or civil. *McMillan v. Durant,* 312 S.C. 200, 439 S.E. (2d) 829 (1993).

The respondents and the dissent point out that Sorensen testified he did not know the standard of care for anesthesiologists. He testified as follows:

Q. You do not intubate patients under operating room conditions, do you?
A. I have.
Q. You have. How many times have you done that?
A. Several times
Q. Several times?
A. . . . in a hospital. Most of my intubations are in the field and much more difficult.

\* \* \* \* \* \*

Q. And the standards that you are talking about—are going to talk about—are the standards by the American Heart Association?

A. They are standards adopted by all the associations. That is the governing body.

Q. Do you know what the standard of care is for anesthesiologists?

A. No, I do not.

Q. You have never testified . . . as an expert in anesthesiology?

A. No, I have not.

Of course, it is not Gooding's claim that Sorensen was qualified to testify to the standard of care in the broad specialty of anesthesiology. Rather, his testimony would have addressed only the limited area of intubation, about which he is well qualified to testify.

Sorensen had received 130-140 hours of training as an EMT as well as 480 hours of training as a paramedic. He also received 45 hours of education and training in instructors' school. He was licensed as a paramedic and certified as an instructor and provider of Advanced Cardiac Life Support (ACLS). He had personally incubated over a hundred patients, both in and out of the hospital. As an instructor teaching ACLS under the auspices of the American Heart Association, Sorensen taught and tested doctors on intubation procedures. He testified methods of intubation are the same in the medical profession. Moreover, both Hood and the hospital agree that breaking teeth is not within the standard of care of an anesthesiologist who is intubating a patient.

■ An abuse of discretion occurs when a judge's ruling has no evidentiary support or the judge makes an error of law. *Williams v. Van Volkenburg*, 312 S.C. 373, 440 S.E. (2d) 408 (Ct. App. 1994). Here the trial court's refusal to allow Soren-sen to testify amounted to an abuse of discretion because he based his ruling on an error of law, (that an expert witness must have the same special expertise as the defending doctor in order to be qualified). Sorensen had expertise concerning intubation and should have been allowed to testify.

## II. Prejudice

St. Francis further argues that because Sorensen's testimony was irrelevant, Gooding was not prejudiced by its exclusion. The hospital acknowledges in its brief that "[t]his case turned upon a determination of how and when [Gooding's] teeth broke" and that the "applicable standard of care of anesthesiologist was never in dispute." In addition, the hospital alleges Gooding was not prejudiced because Dr. Hood admitted that using the teeth as a fulcrum would be a deviation from accepted standards of practice.

However, in the video Sorensen demonstrated the proper technique for handling a laryngoscope[1] in relation to the jaw. He stated:

> The teeth are very proned [sic] to being used as a fulcrum if your technique is not proper. It is a deviation to standard medical practice and procedure to use your teeth as a fulcrum or to use any other motion or bend your wrist other than what I am doing here. People want to if they are not strong enough or inadequate technique or the blade is not inserted far enough to want to bend their wrist and they will use the teeth as a fulcrum. What doesn't feel like a lot of pressure to you, to the teeth is considerable amount of pressure as a fulcrum. Although it does lift the epiglottis up a little higher it will result in broken teeth. . . .

He demonstrated on the video how the patient's teeth are likely to be chipped when inserting the blade, when lifting it, or when withdrawing it. He also emphasized the teeth are easily broken during this procedure (1) if the person doing the procedure has his head too low, causing a bad angle, or (2) if the blade is not inserted far enough, causing the tongue to block a clear path so that the person using the blade has to "pry back to get more pressure and breaks the teeth."

Sorensen's video presented circumstantial evidence of how and when Gooding's teeth were chipped. His testimony was far more detailed than Hood's blanket admission that using

---

[1] A laryngoscope is a long, curved metal blade used for inserting an endotracheal tube through a patient's vocal chords into the patient's trachea so that anesthesia can be administered for surgery.

the teeth as a fulcrum would be a deviation from accepted standards of care. Moreover, the jury could have been bothered by Gooding's lack of an expert, especially in a situation like this in which Hood, a doctor, was obviously an expert, and had testified she did not deviate from the standard required for intubation.

### III. Error Preservation

St. Francis also argues Gooding failed to make an offer of proof of Sorensen's testimony and, therefore failed to preserve the judge's error. However, after Gooding's attorney finished examining Sorensen concerning his qualifications, he attempted to develop the substantive portion of Sorensen's testimony. Hood's attorney objected: "Excuse me, your Honor. I thought we were going to voir dire this witness to qualify him first, not to give any opinions at this time." As soon as Hood's and St. Francis' attorneys finished cross-examining Sorensen about his qualifications, the trial court ruled he was not qualified and could not testify in the case. At that point Gooding's attorney asked: "Well, can I proffer the rest of his testimony then for the record? And I also have a video tape. . . ." The judge responded: "You can put that in the record if you so desire." Gooding's attorney then proffered the video.

The facts of *State v. Myers*, 301 S.C. 251, 257-58, 391 S.E. (2d) 551, 555 (1990), are squarely on point. Justice Toal stated in that case:

> The State argues that the appellants made no proffer regarding the substance of [the expert's] testimony, and for that reason there was no error preserved for our review. We cannot agree. It is clear from the transcript that at least [the expert] was going to enlighten the jury, through her expertise. . . .
>
> Although we have no way of knowing whether [the expert] would have opined that the blood splatters indicated self-defense . . . we can divine that at least [the expert] would have informed the jury of the principles of blood splatter evidence so that the jurors could make an intelligent decision interpreting the blood spatters. The jury was deprived of this expert information. . . .

Gooding proffered enough evidence to show the jury would have benefitted from Sorensen's expertise. The trial judge, therefore, erred in excluding Sorensen's testimony.

Reversed and remanded.

CURETON, J., concurs and GOOLSBY, J., dissents in a separate opinion.

GOOLSBY, Judge, dissenting:

I respectfully dissent.

The sole question involved in this appeal by Jim Curtis Gooding is whether the trial judge abused his discretion in not allowing an emergency medical technician and paramedic to testify as an expert witness regarding the standard of care an anesthesiologist should follow when intubating a surgery patient and the anesthesiologist's departure from that standard. The trial judge properly exercised his discretion and ought, therefore, to be affirmed.

St. Xavier Hospital admitted Gooding on July 8, 1990, for urological surgery. Dr. Judith Hood, a physician specializing in anesthesiology, administered anesthesia to Gooding the following morning in the operation room. Hood intubated Gooding while he was under anesthesia by inserting an endotracheal tube into his mouth and down his trachea. She also inserted a plastic airway tube to prevent Gooding from, among other things, occluding the endotracheal tube.

Gooding remained under anesthesia a little over two hours. Later, after being taken to his room, he discovered his two front teeth were chipped.

His complaint alleges Hood's negligence during the intubation process caused the damage to his teeth.[1]

At trial, Gooding called Sorensen, an emergency medical technician and paramedic, and proffered him as an expert witness regarding "methods of intubation, and what happened to

---

[1] The majority finds as a fact that Goodling's "two front teeth were chipped during surgery at the hospital." Both defendants, however, denied Gooding's allegations in this regard.

[Gooding]."[2] The trial judge refused to qualify Sorensen as an expert witness.

The question of whether a witness is an expert is, within proper limitations, a preliminary fact to be found by the trial judge; and when there is any evidence to sustain the trial judge's findings regarding the competency of the witness to testify as an expert in a particular field, the finding is not reviewable by the appellate court, absent an error of law. P.H. Vartanian, Annotation, *Review on Appeal of Decision of Trial Court as to Qualification or Competency of Expert Witnesses,* 166 A.L.R. 1067 (1947); *see Jenkins v. Long Motor Lines,* 233 S.C. 87, 103 S.E. (2d) 523, 528 (1958) (a trial judge's ruling to exclude expert testimony will not be disturbed on appeal unless it appears an abuse of discretion has occurred); *Creed v. City of Columbia* 310 S.C. 342, 426 S.E. (2d) 785 (1993) (the qualification of a witness as an expert and the admissibility of the witness's testimony are matters largely within the discretion of the trial judge); *cf.* Rule 43(m), SCRCP (rule of court regarding expert testimony).

I would hold the trial judge properly exercised his discretion in excluding Sorensen's testimony as an expert witness on the issues of the standard of care an anesthesiologist must observe when intubating a patient and Hood's compliance with that standard. As I read the record, Sorensen admitted, when defense counsel cross-examined him about his qualifications as an expert in intuabtion, he did not know the standard of care required for an anesthesiologist when an anesthesiologist intubates a patient. Obviously, if Sorensen was unfamiliar with the applicable standard, he necessarily could not have testified about whether Hood deviated from that standard when she intubated Gooding. Indeed, there was no proffer of any evidence by Gooding that Sorensen was prepared to testify that Hood departed from the standard of care required of an anesthesiologist when intubating a patient.

---

[2] In his brief, Gooding frames the issue that this court should decide on appeal as follows:

> The sole issue presented by this appeal is whether the trial judge erred in excluding the testimony of Mr. Sorensen, Plaintiff's expert witness, where Mr. Sorensen, although neither a medical doctor nor an anesthesiologist, was an expert regarding intubation and the issue to be decided by the jury was whether Dr. Hood, an anesthesiologist, deviated from the proper standard of care for intubating a patient.

South Carolina follows the rule stated in 3 KRAMER, *MEDICAL MALPRACTICE* ¶ 29.02[3], at 29-12 (1994):

> In order to recover in an action for medical malpractice against a specialist, the plaintiff must prove that the defendant specialist failed to meet the standard of care required of physicians in that specialty.

*See Bellamy v. Payne*, 304 S.C. 179, 403 S.E. (2d) 326 (Ct. App. 1991) (an orthopedic surgeon held not qualified to testify as an expert witness in an action against a podiatrist where the witness did not satisfy the trial judge he was familiar with the diagnostic, surgical, and treatment procedures used by podiatrists). Sorensen's testimony did not satisfy this rule. See *Botehlo v. Bycura*, 282 S.C. 578, 320 S.E. (2d) 59 (Ct. App. 1984) (to qualify as an expert witness in a case involving allegations of malpractice against a podiatrist, a witness must have knowledge of the standard of care in the podiatric practice).

I would affirm, there being evidence to support the trial judge's findings when he made them and there being no error of law.

On the latter point and contrary to what the majority appears to find, the trial judge did not disqualify Sorensen as an expert witness because Sorensen was not an anesthesiologist; rather, the trial judge disqualified Sorensen because he viewed the evidence as showing Sorensen lacked expertise as to the matters in dispute, *ie.*, the standard of care required of an anesthesiologist who undertakes to intubate a patient and Hood's conformity with that standard. In ruling Sorensen disqualified to testify as an expert, the trial judge stated:

> The [c]ourt is of the opinion that the necessary requirement for expert testimony, and particularly *in malpractice cases,* is of such a nature that *the witness must have a* special *expertise to compare with that of the physician who is defending the charges.*
>
> *In this case,* even though the witness is somewhat trained in the mechanics of this medical assistance [sic], he is not a medical doctor; *he does not have the medical expertise required to testify under the circumstances of this case. . . .*

(Emphasis added.) The trial judge made his ruling after counsel handed him copies of this court's opinions in *Botehlo v. Bycura*, 282 S.C. 578, 320 S.E. (2d) 59 (Ct. App. 1984), and *Durr v. McElrath*, 299 S.C. 30, 382 S.E. (2d) 20 (Ct. App. 1989). These two cases recognize a medical practitioner's duty of care must be measured by the defendant practitioner's particular medical field.