581 S.E.2d 489

Vergie W. FIELDS, Individually and as the Personal
Representative of Thomas Edison Fields,
Deceased, Appellant,

v.

REGIONAL MEDICAL CENTER ORANGEBURG South
Carolina and F. Simons Hane, M.D., Defendants,

Of whom F. Simons Hane, M.D. is Respondent.

No. 3623.

Court of Appeals of South Carolina.

Heard March 12, 2003.

Decided April 14, 2003.

Rehearing Denied June 12, 2003.

446

J. Marvin Mullis, Jr., of Columbia, for Appellant.

Julius W. McKay, II and Kathleen Devereaux Schultz, of Columbia, for Respondent.

ANDERSON, J.:

Vergie Fields brought an action individually and on behalf of her husband's estate against Orangeburg Regional Medical Center ("hospital") and Dr. Simons Hane for wrongful death and medical malpractice. Fields claimed the hospital and Hane were negligent and committed medical malpractice leading to her husband's death. During the trial, the circuit court excluded the testimony of one of Fields's experts regarding his credentials. Additionally, the circuit court refused to allow

Fields to use a treatise to cross-examine Hane. Fields argues these are reversible errors which entitle her to a new trial. We reverse and remand for a new trial.

## FACTS/PROCEDURAL BACKGROUND

On September 14, 1994, Thomas Fields called his wife, Vergie Fields, at her job and asked her to take him to the hospital because he was experiencing severe chest pains, which radiated down into both arms. Fields was a forty-nine-year-old smoker with a family history of heart disease. In 1976, Fields became disabled when he received severe injuries from falling at work. From 1976 to 1994, Fields suffered from a variety of physical and psychiatric ailments and made numerous trips to the emergency room at the hospital. He was hospitalized several times to treat his psychiatric problems during this period.

Fields had previously experienced bouts of chest pain. From 1981 until his death in 1994, the hospital performed fifteen EKGs on Fields. In 1993, Fields's doctor arranged a cardiac catheterization to evaluate whether Fields had coronary artery disease. The results were negative and were in Fields's files at the hospital's emergency room.

When Fields arrived at the hospital's emergency room on September 14, 1994, Dr. Fisher saw him. Fisher ran an EKG and ordered a chest X–Ray, which read normal. Fisher diagnosed Fields with gastrointestinal reflux and chronic back pain. Fisher prescribed Fields a G.I. cocktail, which was administered in the emergency room, and advised Fields to consult his family doctor. Before Fields left, he informed Fisher the G.I. cocktail had provided some relief. Fields saw his psychiatrist the same week and made an appointment to see his family physician the following week.

On September 18, 1994, Fields awoke during the early morning hours once again hurting from severe chest pain, which radiated down both arms. Fields went to the hospital's emergency room in the middle of the night where Hane examined him. When Fields arrived, he asked Hane for another G.I. cocktail. Fields was in so much pain on this occasion that he was sobbing. Hane ran an EKG and reviewed the results from the X–Ray and EKG from September

14th as well as the other records contained within Fields's file, including the results of the 1993 catheterization. The hospital placed Fields on a heart monitor for approximately forty-five minutes to an hour. The monitor kept track of Fields's cardiac activity during that time, all of which appeared normal. Hane diagnosed Fields with histrionics and gastrointestinal pain. Fields received a G.I. cocktail and a shot of Vistaril and Nubain to treat the histrionics. Hane released Fields at 3:50 a.m. and instructed him to return to the emergency room if the condition persisted or worsened and to consult his family physician.

When Fields and his wife left the hospital, his pain intensified one or two miles away from the hospital. They stopped for a drink at a gas station and decided to drive to the Palmetto Baptist Hospital in downtown Columbia, about forty-five minutes away. When they reached Baptist, Vergie Fields informed the emergency room staff that she thought her husband was having a heart attack. The Baptist emergency physicians performed an EKG which confirmed Fields was having a heart attack. The cardiologist at Baptist decided not to treat Fields with clot buster drugs but instead had Fields transported by helicopter to Providence Hospital to have an emergency cardiac catheterization performed. While undergoing the procedure, one of Fields's coronary arteries dissected, a known risk of the procedure. He died shortly thereafter.

Vergie Fields brought a wrongful death suit against the hospital and Hane, contending they were negligent and committed medical malpractice by failing to admit Fields on September 18th. The case went to trial, and the jury returned a verdict in favor of the hospital and Hane. Vergie Fields appeals, alleging the circuit court erred by not admitting testimony regarding the credentials of one of her expert witnesses and failing to allow her to use a treatise during Hane's cross-examination. After Vergie Fields filed this appeal, she reached a settlement with the hospital.

## *LAW/ANALYSIS*

### I. Expert Witness Qualifications

In order for a plaintiff to recover for medical malpractice, he must illustrate the physician failed to exercise the

degree of care and skill which is ordinarily employed by the profession under similar conditions and like circumstances. *Jernigan v. King,* 312 S.C. 331, 333, 440 S.E.2d 379, 381 (Ct.App.1993); *Bonaparte v. Floyd,* 291 S.C. 427, 434, 354 S.E.2d 40, 45 (Ct.App.1987); *Welch v. Whitaker,* 282 S.C. 251, 258, 317 S.E.2d 758, 763 (Ct.App.1984). This must be established by expert testimony unless the subject matter is of common knowledge or experience. *Bramlette v. Charter-Med.–Columbia,* 302 S.C. 68, 72, 393 S.E.2d 914, 916 (1990); *Pederson v. Gould,* 288 S.C. 141, 142, 341 S.E.2d 633, 634 (1986); *Green v. Lilliewood,* 272 S.C. 186, 192, 249 S.E.2d 910, 913 (1978); *Bonaparte,* 291 S.C. at 434, 354 S.E.2d at 45; 61 Am.Jur.2d *Physicians, Surgeons* § 318 (2002).

 Qualification of an expert and the admission or exclusion of his testimony is a matter within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent an abuse of discretion. *Payton v. Kearse,* 329 S.C. 51, 60–61, 495 S.E.2d 205, 211 (1998); *Means v. Gates,* 348 S.C. 161, 166, 558 S.E.2d 921, 923 (Ct.App.2001); *Small v. Pioneer Mach., Inc.,* 329 S.C. 448, 469–70, 494 S.E.2d 835, 846 (Ct.App.1997). To warrant reversal, the appellant must prove both the error of the ruling and resulting prejudice. *Burroughs v. Worsham,* 352 S.C. 382, 391, 574 S.E.2d 215, 219 (Ct.App.2002). An abuse of discretion occurs when there is an error of law or factual conclusion that is without evidentiary support. *Fontaine v. Peitz,* 291 S.C. 536, 538, 354 S.E.2d 565, 566 (1987); *Burroughs,* 352 S.C. at 391, 574 S.E.2d at 219; *Hedgepath v. Amer. Tel. & Tel. Co.,* 348 S.C. 340, 353, 559 S.E.2d 327, 334 (Ct.App.2001); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 128, 542 S.E.2d 736, 742 (Ct.App. 2001). A court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion where the ruling is manifestly arbitrary, unreasonable, or unfair. *Gates,* 348 S.C. at 166, 558 S.E.2d at 924. The appellant must show prejudice for the Court of Appeals to reverse a judgment. *Hanahan v. Simpson,* 326 S.C. 140, 156, 485 S.E.2d 903, 911 (1997); *Commerce Ctr. of Greenville v. W. Powers McElveen & Assocs., Inc.,* 347 S.C. 545, 559, 556 S.E.2d 718, 726 (Ct.App. 2001).

To be competent as an expert, a witness must have acquired, by reason of study or experience, or both, such knowledge and skill in a business, profession, or science that he is better qualified than the fact finder to form an opinion. *Gooding v. St. Francis Xavier Hosp.*, 326 S.C. 248, 252–53, 487 S.E.2d 596, 598 (1997); *Ott v. Pittman*, 320 S.C. 72, 76, 463 S.E.2d 101, 104 (Ct.App.1995); *Hall v. Clarendon Outdoor Adver., Inc.*, 311 S.C. 185, 188, 428 S.E.2d 1, 2 (Ct.App.1993); Rule 702, SCRE ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."). It is incumbent that the party offering the expert manifest that the witness possesses the necessary learning, skill, or practical experience to enable him to give opinion testimony. *State v. Myers*, 301 S.C. 251, 391 S.E.2d 551 (1990); *Thomas Sand Co. v. Colonial Pipeline Co.*, 349 S.C. 402, 410–11, 563 S.E.2d 109, 113 (Ct.App.2002). The test is a relative one, depending on the particular witness's reference to the subject. *Gooding*, 326 S.C. at 253, 487 S.E.2d at 598; *Lee v. Suess*, 318 S.C. 283, 285, 457 S.E.2d 344, 346 (1995). An expert is not limited to any class of persons acting professionally. *Gooding*, 326 S.C. at 253, 487 S.E.2d at 598; *Botehlo v. Bycura*, 282 S.C. 578, 320 S.E.2d 59 (Ct.App.1984). There is no exact requirement concerning how knowledge or skill must be acquired. *Honea v. Prior*, 295 S.C. 526, 369 S.E.2d 846 (Ct.App.1988).

Usually, if opinion testimony is offered by a physician or surgeon, his competency to testify as an expert is sufficiently established by the fact that he has been duly licensed to practice medicine or surgery. *State v. Moorer*, 241 S.C. 487, 129 S.E.2d 330 (1963) (overruled on other grounds by *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991)); *Hill v. Carolina Power & Light Co.*, 204 S.C. 83, 28 S.E.2d 545 (1943). A physician or surgeon is not incompetent to testify as an expert merely because he is not a specialist in the particular branch of his profession involved in the case. *Creed v. City of Columbia*, 310 S.C. 342, 426 S.E.2d 785 (1993). The fact that the physician is not a specialist in the particular area affects only the weight of the witness's testimony and affords no basis

for completely rejecting it. *Hill,* 204 S.C. at 109, 28 S.E.2d at 555; *Brown v. LaFrance Indus.,* 286 S.C. 319, 333 S.E.2d 348 (Ct.App.1985).

A proper technique for attacking an expert's testimony is to impeach him on his limited experience in the area about which he has testified. Any defects in the amount and quality of education or experience go to the weight to be accorded the expert's testimony, but not its admissibility. *State v. Schumpert,* 312 S.C. 502, 505, 435 S.E.2d 859, 861 (1993); *State v. Myers,* 301 S.C. 251, 391 S.E.2d 551 (1990); *Ott,* 320 S.C. at 76, 463 S.E.2d at 104. An expert is not limited to any class of persons acting professionally, for the test for qualifying as an expert is a relative one that is dependent on the particular witness's reference to the subject. *See Gooding v. St. Francis Xavier Hosp.,* 317 S.C. 320, 324, 454 S.E.2d 328, 330 (Ct.App.1995), *rev'd in part on other grounds,* 326 S.C. 248, 487 S.E.2d 596 (1997) (an emergency room technician who was licensed to perform intubations and had taught the procedure was qualified to testify about the proper way to intubate a patient in a medical malpractice suit against a board-certified anesthesiologist); *McMillan v. Durant,* 312 S.C. 200, 439 S.E.2d 829 (1993) (a neurosurgeon who was also a teacher in nursing was qualified to testify about the appropriate standard for nursing care).

One of Fields's experts was Dr. George Podgorny. Podgorny's testimony was taken by video deposition and was introduced during the trial. The deposition showed that Podgorny specialized in emergency medicine and had practiced emergency medicine for twenty-five years. Fields's counsel asked Podgorny whether he was board-certified in emergency medicine. Podgorny answered that he was not and sought to explain his answer. *"The reason [why I'm not board-certified] is that I was the first president of the Board of Emergency Medicine and was instrumental in development of the examination, and then served for many years as the editor of both the written and the oral exam."* Hane objected to the reason coming before the jury on hearsay grounds. The circuit court agreed it was hearsay and excluded it. Fields proffered Podgorny's remaining testimony regarding this issue. *"[T]he opinion of legal counsel was that*

*there may be a conflict of interest if I [had taken] the exam*
*[because it would have been perceived] that I knowed [sic]*
*all the answers."*

Fields maintains the circuit court erred by excluding Pod-gorny's testimony regarding his explanation for not being board-certified in emergency medicine and is entitled to a new trial. We agree.

 Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Rule 801(c), SCRE. Proof of a statement introduced to show a party heard and acted upon information is not objectionable hearsay. *Webb v. Elrod*, 308 S.C. 445, 449, 418 S.E.2d 559, 562 (Ct.App. 1992); 31A C.J.S. *Evidence* § 259 (1996) ("[T]estimony is not hearsay where it relates to what the witness himself did in reliance on, or in response to, a statement, facts upon which action was taken, personal observations, explanation of con-duct, the effect of statements on the listener, the fact that something was said, or identifying what was said.").

 Podgorny's statement is a classic example of showing an action based upon information and is not offered for the truth of the matter asserted. The statement was not offered to prove that the counsel was correct in showing that there would be a conflict of interest if Podgorny took the test, but rather explained why Podgorny did not take the test and therefore, was not board-certified.

This case presented the quintessential battle of the experts. Fields's experts, including Podgorny, contended the hospital and Hane failed to reach an appropriate level of care. Fields specifically avowed they committed malpractice by failing to take an adequate history and failing to admit Fields in light of his history. The hospital's and Hane's experts professed that because they were so familiar with Fields and had reviewed so many of his prior medical records, they met a reasonable level of care by not admitting Fields. In this scenario, the creden-tials of the experts are critical when the jury is determining the credibility of the competing expert witnesses.

Hane protests that even if the statement was not hearsay, its exclusion was harmless error. We disagree. Each expert

was asked whether he was board-certified in emergency medicine when testifying during the trial. Even Hane was asked if he was board-certified during his testimony. During the closing arguments, Hane's counsel asserted that his expert, Bartlett, was board-certified in emergency medicine and was a true expert as opposed to Podgorny, who was not board-certified. *"Remember Dr. Bartlett ... This man is a true expert. He knows what he's talking about. Dr. Podgorny, what evidence is there that Dr. Podgorny writes the test? Ridiculous! Dr. Podgorny never took the test to be board certified."*

Hane's closing argument shows that Fields was irrefutably prejudiced by the exclusion of this testimony. Since the statement was not hearsay, the jury was entitled to hear Podgorny's response to the question of why he had never taken the test for board certification in emergency medicine. This case demonstrated the paradigmatic example of "clashing experts and debatable qualifications." It was reversible error to exclude Podgorny's testimony.

## II. Admission of Learned Treatise

During Hane's cross-examination, Fields's counsel queried Hane whether he thought a single isolated EKG, as opposed to continued monitoring with multiple EKGs, was appropriate. Hane stated he thought it was appropriate. Fields then asked Hane if he was familiar with a textbook of emergency medicine authored by Tintinalli, Krome and Ruiz. Hane responded that he was familiar with the treatise since it was used as a reference text in the emergency room. Hane admitted the book was an authority in emergency medicine. Fields's counsel noticed the text was sitting on Hane's table and asked whether Hane had reviewed the text prior to his testimony. Fields sought to question Hane on the contents contained in the text.

Hane's counsel objected to the question referring to the text on the basis of an improper foundation and the text was not referred to in the answer to interrogatories, which asked what treatises or materials Fields would use during the trial. The circuit court sustained Hane's objection on the grounds that Fields failed to list the treatise in the answer to interrogatories.

Fields asserts the circuit court committed reversible error when it sustained Hane's objection and prohibited Fields from questioning Hane about the text of the treatise. We agree.

Parties are allowed to cross-examine an expert witness about a treatise used or relied upon by the expert witness to support his opinion in direct examination. 31A Am.Jur.2d *Expert and Opinion Evidence* § 104 (2002).

> To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other testimony or by judicial notice [are not excluded by the hearsay rule.]

Rule 803(18), SCRE.

There is no question in this case that the Tintinalli book is a recognized treatise. Hane acknowledged the book is a commonly used reference in the emergency room and he admitted reviewing the text prior to his testimony. There was certainly a sufficient foundation established for its use.

Hane's interrogatories propounded to Fields asked: "Give the title, author, date, volume and page, where appropriate, of any periodical, journal, text, paper or other publication of any kind, to which [Fields] intends to refer, or about which [Fields] intends to ask any questions, during the examination o[r] cross-examination of any witness at trial or during any deposition." Fields responded, "Plaintiff has not yet identified any specific journals, text of learned treaties. [sic] The Plaintiff reserves the right to supplement this interrogatory at a later date once an expert witness has been identified or once discovery from the other parties has been completed." Fields did not supplement her answers and stated she was not aware of the Tintinalli treatise until the morning of the trial.

Rule 37(b)(2), SCRCP allows a court to impose a variety of sanctions for failure to comply with a discovery order.

> [T]he court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

**(A)** An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

**(B)** An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

**(C)** An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

**(D)** In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination;

**(E)** Where a party has failed to comply with an order under Rule 35(a) requiring him to produce another for examination, such orders as are listed in paragraphs (A), (B), and (C) of this subdivision, unless the party failing to comply show that he is unable to produce such person for examination.

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

Rule 37(b)(2), SCRCP. The circuit court sanctioned Fields by disallowing the use of the Tintinalli treatise during Hane's cross-examination.

▆▆▆▆ The decision of what kind and whether to impose discovery sanctions is left to the sound discretion of the circuit court. *Griffin Grading & Clearing v. Tire Serv. Equip. Mfg. Co.*, 334 S.C. 193, 198, 511 S.E.2d 716, 718 (Ct.App.1999); *Downey v. Dixon*, 294 S.C. 42, 45, 362 S.E.2d 317, 318 (Ct.App.1987); *McGaha v. Mosley*, 283 S.C. 268, 277, 322 S.E.2d 461, 466 (Ct.App.1984). In deciding what sanction to

impose, the circuit court should weigh the nature of the interrogatories, the discovery posture of the case, willfulness, and the degree of prejudice. *Samples v. Mitchell,* 329 S.C. 105, 112, 495 S.E.2d 213, 216 (Ct.App.1997); *Moran v. Jones,* 281 S.C. 270, 276, 315 S.E.2d 136, 139 (Ct.App.1984). A circuit court's failure to exercise discretion is itself an abuse of discretion. *In re Robert M.,* 294 S.C. 69, 71, 362 S.E.2d 639, 640 (1987); *State v. Smith,* 276 S.C. 494, 498, 280 S.E.2d 200, 202 (1981); *State v. Mansfield,* 343 S.C. 66, 86, 538 S.E.2d 257, 267 (Ct.App.2000); *Balloon Plantation, Inc. v. Head Balloons, Inc.,* 303 S.C. 152, 155, 399 S.E.2d 439, 441 (Ct.App.1990).

Failure to disclose a witness in answer to an interrogatory when only discovered several days before trial does not show willfulness. *Martin v. Dunlap,* 266 S.C. 230, 239, 222 S.E.2d 8, 12 (1976); *Laney v. Hefley,* 262 S.C. 54, 202 S.E.2d 12 (1974). The purpose of interrogatories is to promote full and fair disclosure to prevent surprise to either party. *South Carolina State Highway Dep't v. Booker,* 260 S.C. 245, 252, 195 S.E.2d 615, 619 (1973); *see also Reed v. Clark,* 277 S.C. 310, 316, 286 S.E.2d 384, 388 (1982) ("Disclosure of information between the parties before trial is designed to avoid surprise and to promote decisions on the merits after a full and fair hearing.").

In this case, Fields stated she only found out about the treatise on the day of the trial. Concomitantly, there was no showing of willfulness. Hane had a copy of the treatise with him during the trial and admitted using it to prepare for his testimony. Therefore, Hane could certainly not be surprised by being asked about this treatise as it was the very same one he was using himself. This negates any contention that Hane was prejudiced by Fields's failure to supplement her interrogatories. The only factor the judge discussed when excluding questions involving the treatise was the nature of the interrogatory: "That's the reason we have interrogatories so we won't have surprises in trials, right?"

In *Samples v. Mitchell,* the court instructed: "In deciding what sanction to impose for failure to disclose evidence during the discovery process, the trial court should weigh the nature of the interrogatories, the discovery posture of the case, willfulness, and the degree of prejudice." 329 S.C. at 112, 495

S.E.2d at 216 (citing *Laney,* 262 S.C. at 60, 202 S.E.2d at 15 (1974); *Moran,* 281 S.C. at 276, 315 S.E.2d at 139–40). The circuit court failed to exercise discretion. "A failure to exercise discretion amounts to an abuse of that discretion." *Samples,* 329 S.C. at 112, 495 S.E.2d at 216 (citing *Fontaine,* 291 S.C. at 538, 354 S.E.2d at 566 ("When the trial judge is vested with discretion, but his ruling reveals no discretion was, in fact, exercised, an error of law has occurred."); *Balloon Plantation,* 303 S.C. at 155, 399 S.E.2d at 441 (quoting *Smith,* 276 S.C. at 498, 280 S.E.2d at 202 ("It is an equal abuse of discretion to refuse to exercise discretionary authority when it is warranted as it is to exercise the discretion improperly."))). We find the circuit court erred when it disallowed Fields from using the Tintinalli treatise in cross-examining Hane.

## CONCLUSION

Based on the foregoing, the decision of the circuit court is **REVERSED AND REMANDED.**

HUFF, J., and MOREHEAD, Acting Judge, concur.