595 S.E.2d 817

**Mark W. ELLIS, individually, and in the right of American Survey, Inc., Appellant,**

v.

**Eric J. DAVIDSON, L. Russell Bennett, Jarrel L. Wigger, Mark W. Weeks, Kelly Davis, American Survey, Inc., Davidson and Bennett, Absolute Survey, Inc., jointly and severally, Respondents.**

No. 3748.

Court of Appeals of South Carolina.

Heard Feb. 11, 2004.

Decided March 1, 2004.

Rehearing Denied May 20, 2004.

---

510

514

Cynthia B. Castengera, of Newland, NC and D. Dusty Rhoades, of Charleston, for appellant.

M. Dawes Cooke, Jr. and K. Michael Barfield, both of Charleston, for respondents.

ANDERSON, J.:

Mark W. Ellis, individually and on behalf of American Survey, Inc., appeals from the trial judge's grant of partial summary judgment to Respondents. We affirm in part, reverse in part, and remand.

## FACTS/PROCEDURAL BACKGROUND

In the spring of 1998, Ellis, a licensed surveyor, decided to start his own residential surveying company. Ellis contacted Rusty Bennett, a partner at the law firm of Davidson & Bennett (the Firm) because he needed an investor. Ellis had performed prior survey work for the Firm. According to Ellis, Bennett agreed to invest in the company and stated:

That he would handle all of the legal paperwork and make sure that the company was set up properly and that [Ellis's] rights were protected.... [Bennett] said he would cover all legal advice involving [Ellis] and the company, for [Ellis] not to worry about anything other than producing surveys.

Ellis believed that, in having the Firm invest in the business, he would be able to perform work for the Firm and have the Firm set up the surveying company in such a way that he was protected from liability. After Bennett invested, the business ownership was: Bennett—60%; Ellis—40%; the 1000 shares of common stock would be divided proportionally, with no restrictions placed upon them; Bennett would "set up" the surveying company; and Ellis would be employed by the surveying company. Other than proposed business plans, no written contracts or documents memorialize the agreement between Ellis and Bennett. The parties created American Survey, Inc. (American). Bennett set up the company and arranged for American to lease space in a building he owned. At some point, Bennett's law partner in the Firm, Eric Davidson, became a shareholder in American. Ellis claimed that, in January of 1999, he "was told [the new percentage of ownership] was one-third, one-third, one-third." Bennett professed he "believe[d] ... the agreement ... was that [he and Davidson] would hold 65 percent of the shares and [Ellis] would have 35 percent of the shares." [1]

Several months later, Bennett retired from the practice of law and sold his interest in the Firm and the Firm's businesses (including American) to his three partners: Davidson, Jarrell Wigger, and Mark Weeks (hereinafter, "the Firm"). After Bennett's retirement, the Firm instructed Ellis not to sign a new lease with Bennett. The Firm met with Ellis after discovering Bennett never filed American's corporate papers. In fact, Bennett never kept corporate minutes, records, or by-laws for American. Ellis testified the members of the Firm told him they were acting as attorneys for the corporation, and that he should sign the papers as instructed.

---

1. While Ellis and Bennett disagree over the series of events leading to Davidson's participation in American, it is clear Davidson was involved early in American's formation.

Ellis and the Firm soon disagreed over the way Ellis operated American. At a meeting in March of 1999, Ellis told the Firm he wanted to buy out their interest in American. After offers and counteroffers were made and rejected, the parties came to a verbal agreement about the buyout. The agreement was put into writing, and Ellis and Davidson faxed revisions back and forth. While admitting the buyout negotiations were "a matter strictly of business," Ellis stated the Firm did not advise him to obtain separate counsel, and that he thought the Firm acted as attorneys on behalf of both American and himself. The agreement was not finalized, as Ellis wanted a written commitment from the Firm that American would still continue to be used as the Firm's chief surveying company. In order to force a decision, Ellis informed the Firm that he would close American's doors and terminate its employees if the Firm did not agree to his terms. The Firm then decided to close American themselves. They arrived at American with deputy sheriffs, terminated the employees, and changed the locks.

At approximately the same time Ellis and the Firm were in the midst of buyout discussions, the Firm decided to form a new surveying company. Members of the Firm testified the new company, Absolute Survey Inc. (Absolute), would be run by Kelly Davis and would perform surveying for the Firm after Ellis bought their interests in American. Ellis declared that, while he was aware of Absolute's formation, he did not realize it would be a competing surveying company.

On behalf of American and in his individual capacity, Ellis filed an amended complaint against the Firm (including the lawyers in their individual capacities), American, Absolute, and Davis. Ellis alleged various causes of action, including breach of fiduciary duty, legal malpractice, conversion, and civil conspiracy. The Firm and the lawyers in their individual capacities answered, counterclaimed, and moved for summary judgment. Additionally, the Firm asked for summary judgment for Davis as to all claims against him.

The Circuit judge granted the Firm's summary judgment motion as to the causes of action for legal malpractice and breach of fiduciary duty. The judge denied the motion for summary judgment as to the remaining causes of action.

Further, the judge granted summary judgment in Davis's favor as to all causes of action against him. The judge denied Ellis's subsequent motion for reconsideration.

## ISSUES

I. Did the trial judge err in classifying the relationship that existed between the parties?

II. Did the trial judge err in "discounting" the expert witness affidavit?

III. Did the trial judge err in dismissing Kelly Davis as a party?

## STANDARD OF REVIEW

When reviewing the grant of a summary judgment motion, the appellate court applies the same standard which governs the trial court under Rule 56(c), SCRCP: summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Laurens Emergency Med. Specialists v. M.S. Bailey & Sons Bankers*, 355 S.C. 104, 584 S.E.2d 375 (2003); *Fleming v. Rose*, 350 S.C. 488, 567 S.E.2d 857 (2002); *Regions Bank v. Schmauch*, 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003); *Redwend Ltd. P'ship v. Edwards*, 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003). In determining whether any triable issue of fact exists, the evidence and all inferences which can reasonably be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Sauner v. Public Serv. Auth.*, 354 S.C. 397, 581 S.E.2d 161 (2003); *Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 S.E.2d 711 (2003); *McNair v. Rainsford*, 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998); *see also Laurens Emergency Med. Specialists*, 355 S.C. at 108, 584 S.E.2d at 377 (stating that in reviewing summary judgment motion, facts and circumstances must be viewed in light most favorable to non-moving party). If triable issues exist, those issues must go to the jury. *Baril v. Aiken Reg'l Med. Ctrs.*, 352 S.C. 271, 573 S.E.2d 830 (Ct.App.2002); *Young v. South Carolina Dep't of Corrections*, 333 S.C. 714, 511 S.E.2d 413 (Ct.App.1999).

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Russell v. Wachovia Bank, N.A.,* 353 S.C. 208, 578 S.E.2d 329 (2003); *Regions Bank,* 354 S.C. at 659, 582 S.E.2d at 438; *Hedgepath v. American Tel. & Tel. Co.,* 348 S.C. 340, 559 S.E.2d 327 (Ct.App.2001); Rule 56(c), SCRCP. All ambiguities, conclusions, and inferences arising from the evidence must be construed most strongly against the moving party. *Schmidt v. Courtney,* 357 S.C. 310, 592 S.E.2d 326 (Ct.App.2003); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001); *see also Ferguson v. Charleston Lincoln Mercury, Inc.,* 349 S.C. 558, 563, 564 S.E.2d 94, 96 (2002) ("On appeal from an order granting summary judgment, the appellate court will review all ambiguities, conclusions, and inferences arising in and from the evidence in a light most favorable to the non-moving party below.").

██ Summary judgment is not appropriate where further inquiry into the facts of the case is desirable to clarify the application of the law. *Brockbank v. Best Capital Corp.,* 341 S.C. 372, 534 S.E.2d 688 (2000); *Bayle,* 344 S.C. at 120, 542 S.E.2d at 738. Summary judgment should not be granted even when there is no dispute as to evidentiary facts if there is disagreement concerning the conclusion to be drawn from those facts. *Moriarty v. Garden Sanctuary Church of God,* 341 S.C. 320, 534 S.E.2d 672 (2000). However, when plain, palpable, and indisputable facts exist on which reasonable minds cannot differ, summary judgment should be granted. *Hedgepath,* 348 S.C. at 355, 559 S.E.2d at 336; *Pye v. Aycock,* 325 S.C. 426, 480 S.E.2d 455 (Ct.App.1997).

Under Rule 56(c), SCRCP, the party seeking summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. *Regions Bank,* 354 S.C. at 659, 582 S.E.2d at 438; *Trivelas v. South Carolina Dep't of Transp.,* 348 S.C. 125, 558 S.E.2d 271 (Ct.App.2001). Once the party moving for summary judgment meets the initial burden of showing an absence of evidentiary support for the opponent's case, the opponent cannot simply rest on mere allegations or denials contained in the pleadings. *Regions Bank,* 354 S.C. at 660, 582 S.E.2d at 438. Rather, the nonmoving party must come forward with specific facts show-

ing there is a genuine issue for trial. *SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990); *Peterson v. West American Ins. Co.,* 336 S.C. 89, 518 S.E.2d 608 (Ct.App.1999); Rule 56(c), SCRCP. The purpose of summary judgment is to expedite disposition of cases which do not require the services of a fact finder. *Dawkins v. Fields,* 354 S.C. 58, 580 S.E.2d 433 (2003); *George v. Fabri,* 345 S.C. 440, 548 S.E.2d 868 (2001).

## *LAW/ANALYSIS*

### I. Relationship Between the Parties

#### A. Fiduciary Duty

Ellis argues the trial judge erred in finding there was no evidence of a fiduciary duty between the Firm and Ellis and/or American. We agree.

█ A fiduciary relationship is founded on the trust and confidence reposed by one person in the integrity and fidelity of another. *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003); *Redwend Ltd. Partnership v. Edwards,* 354 S.C. 459, 581 S.E.2d 496 (Ct.App.2003); *Steele v. Victory Sav. Bank,* 295 S.C. 290, 368 S.E.2d 91 (Ct.App.1988). A fiduciary relationship exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence. *Hendricks v. Clemson Univ.,* 353 S.C. 449, 578 S.E.2d 711 (2003); *O'Shea v. Lesser,* 308 S.C. 10, 416 S.E.2d 629 (1992); *SSI Med. Servs., Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990); *Regions Bank,* 354 S.C. at 670, 582 S.E.2d at 444; *Steele,* 295 S.C. at 293, 368 S.E.2d at 93. A relationship must be more than casual to equal a fiduciary relationship. *Regions Bank,* 354 S.C. at 670, 582 S.E.2d at 444; *Steele,* 295 S.C. at 293, 368 S.E.2d at 93.

██ As a general rule, a fiduciary relationship cannot be created by the unilateral action of one party. *Regions Bank,* 354 S.C. at 670, 582 S.E.2d at 444; *Brown v. Pearson,* 326 S.C. 409, 483 S.E.2d 477 (Ct.App.1997). To establish the existence of a fiduciary relationship, the facts and circumstances must indicate the party reposing trust in another has some foundation for believing the one so entrusted will act not in his own

behalf but in the interest of the party so reposing. *Burwell v. South Carolina Nat'l Bank,* 288 S.C. 34, 340 S.E.2d 786 (1986). The evidence must show the entrusted party actually accepted or induced the confidence placed in him. *Regions Bank,* 354 S.C. at 671, 582 S.E.2d at 444; *State v. Parris,* 353 S.C. 582, 578 S.E.2d 736 (Ct.App.2003); *Brown,* 326 S.C. at 423, 483 S.E.2d at 484.

■ We find there are genuine issues of material fact as to whether a fiduciary duty existed between the Firm and Ellis, in his individual and representative capacities. There is evidence that Ellis relied upon the Firm's legal expertise and reposed a "trust and confidence" in the Firm in their joint business dealings. The Firm had always tendered legal advice to Ellis, even after American was set up. For example, Davidson instructed Ellis to speak to Wigger about an American employee who was injured in the course of his employment.

We rule that genuine issues of material fact exist as to whether the Firm breached a fiduciary duty in its treatment of Ellis, both in his individual and representative capacities. We disagree with the judge's finding that any such duty ended with the formation of American. Bennett was integral to the process of structuring and incorporating American. When asked who "had the responsibility of handling all of the legal work with the formation of American," Bennett responded: "That would have been me or our firm." According to Ellis, even after American was set up and Bennett left the Firm, the remaining members of the Firm told Ellis they were acting as American's attorneys. When queried regarding whether he or the Firm gave advice to Ellis personally or to American, Weeks answered: "American Survey." The Firm instructed Ellis about: (1) breaking American's lease in Bennett's building and (2) following their advice in signing papers to properly incorporate American. In fact, when the parties were engaged in buyout negotiations, Ellis testified he did not obtain separate counsel because he believed the Firm acted as attorneys for both himself and American.

We conclude genuine issues of material fact exist as to whether there was a fiduciary duty and, if so, whether such duty was breached. Accordingly, the trial judge erred in granting summary judgment on this issue.

## B. Attorney–Client Relationship

Ellis contends the trial judge erred in finding there was insufficient evidence of an attorney-client relationship between the Firm and Ellis and/or American. We agree.

Our courts have recognized the attorney-client relationship is, by its very nature, a fiduciary one. *Hendricks v. Clemson Univ.*, 353 S.C. 449, 578 S.E.2d 711 (2003); *Weatherford v. Price*, 340 S.C. 572, 532 S.E.2d 310 (Ct.App.2000); *see also Hotz v. Minyard*, 304 S.C. 225, 403 S.E.2d 634 (1991) (noting that attorney-client relationship is by nature a fiduciary one); *De Pass v. Piedmont Interstate Fair Ass'n*, 217 S.C. 38, 59 S.E.2d 495 (1950) (stating that a fiduciary relationship always exists between attorney and client). The relationship between an attorney and a client is highly fiduciary in its nature and of a very delicate, exacting and confidential character, requiring a high degree of fidelity and good faith. *Weatherford*, 340 S.C. at 582, 532 S.E.2d at 315; 7 Am.Jur.2d *Attorneys at Law* § 137 (1997).

In the instant case, the Firm was intricately involved in American's business—from the time of its formation until the Firm's lockout of the company. Bennett drafted the initial incorporation papers for American and, after Bennett left the Firm, the remaining Firm attorneys re-drafted and filed American's corporate papers. The following colloquy occurred during Ellis's deposition:

Q Can you think of any other personal legal advice that they have given you?

A Yes. At our second meeting at Davidson and Bennett, the missing corporate books showed up that were at the James Island office the whole time, and Eric stated that Jerry would be going over with me the corporate books and what needed to be taken care of.

Jerry opened up the books sitting there at the table across from me and said, none of this stuff ha[s] been done, all of the forms are blank. That I could get sued personally. Mark Weeks jumped up and said, we are one station wagon loaded full of kids with a soccer mom going through an intersection and having one of our vehicles hit her, and that I could be sued personally and they could take everything that I own.

522

Jerry flipped open the book and said, you need to sign here and we get our ass off—you need to sign here, you need to sign here. I am sitting there going, shit, I had no idea, Rusty was supposed to be taking care of this.

At the same time they are going, this company is a "C" corp., Rusty put the screws to us, we should have been a "S" corp. Rusty made it a "C" corp. to protect his ass. That is the only reason Rusty did it. He didn't give a shit about you, Mark. He has this thing as a "C" corp.

Sign here, sign here, take care of this. I am thinking, the signatures I am putting on these blank sheets of paper, if you look, you will see they are not only blank, but they are not dated, was to protect me from getting sued. This is what they are telling me sitting in that office—

Q Who told you—

A—they are protecting my rights.

Q Who told you that?

A Mark Weeks, Jerry Wigger and Eric Davidson, sitting in there.

Q What did you sign?

A I signed every piece of paper they threw in front [of] me that they said would cause me to get sued by some soccer mom loaded up full of kids.

Q What were the papers that you signed?

A I signed a bunch of papers. I couldn't tell you the exact one. I tell you how quick it went, you need to sign here, flip, flip, you need to sign here, flip, flip, and sign here and sign here, and this is going to protect you, Mark, this is going to stop that soccer mom loaded full of kids from suing you personally.

Q You mean by making sure that the corporation was duly incorporated, is that what they were telling you?

A What they told me, what Jerry Wigger told me, in particular, as I was told from Eric, that he was a business attorney for the group, was that a corporation has to act as a corporation. It cannot act as just some little fly by night, oh, yeah, we filed some paperwork with the State, therefore, we have this corporate veil, we are impenetrable personally by it.

Jerry said that is what he did all day long is pierce the corporate veil in order to go after personal assets, personal,

private assets, and that he was protecting me by me signing these documents.

After American was properly formed, the Firm advised Ellis on at least one Workers' Compensation matter and acted in American's interest in negotiating a new lease for American's offices. In addition, the Firm did not advise Ellis to obtain outside counsel during the buyout negotiations.

We conclude there was ample evidence presented to overcome summary judgment on this matter. Concomitantly, the trial judge erred in finding there was insufficient evidence of an attorney-client relationship.

## C. Legal Malpractice

Ellis maintains the trial judge erred in finding there was no evidence of legal malpractice. We agree.

■ In order to prevail in a legal malpractice action, the plaintiff must prove four elements:

(1) the existence of an attorney-client relationship;

(2) a breach of duty by the attorney;

(3) damage to the client; and

(4) proximate causation of the client's damages by the breach.

*Smith v. Haynsworth, Marion, McKay & Geurard,* 322 S.C. 433, 472 S.E.2d 612 (1996); *Sims v. Hall,* 357 S.C. 288, 592 S.E.2d 315 (Ct.App.2003); *Hall v. Fedor,* 349 S.C. 169, 561 S.E.2d 654 (Ct.App.2002); *Henkel v. Winn,* 346 S.C. 14, 550 S.E.2d 577 (Ct.App.2001); *McNair v. Rainsford,* 330 S.C. 332, 499 S.E.2d 488 (Ct.App.1998).

■ Viewing the evidence in the light most favorable to Ellis and American, we find there was sufficient evidence presented on the issue of legal malpractice to survive the Firm's motion for summary judgment. Factual issues exist as to the (1) buyout negotiations; (2) subsequent lockout of the American offices; and (3) Firm's formation of a rival surveying company, Absolute, in the midst of these buyout negotiations. We disagree with the trial judge's finding that no evidence exists as to damages. The damages Ellis and American suffered in this case flowed from the improper formation of American. The Firm did not perform several functions, including: issuing stock certificates, holding an organizational

meeting, writing by-laws, drafting an employment contract for Ellis, and preparing documentation that Ellis loaned personal equipment to American. If the Firm had drafted these documents, the rights and responsibilities of the parties could have been clearly laid out. For example, stock restrictions could have been implemented, corporate governance could have been set out, a right of first refusal in transferring company stock could have been included, and the procedure for valuing and selling American could have been devised and agreed upon by the parties. As a result of the Firm's poor drafting, Ellis was not apprised of the proper procedures and methods for governing American. He was later literally and figuratively shut out of American's operation. Further, as there was no documentation of equipment loaned to American, Ellis lost several pieces of personal property when the Firm effected a lockout of the company. Finally, genuine issues of material fact exist as to whether these damages were proximately caused by the Firm's improper formation of American.

## II. Affidavit from Expert Witness

Ellis asserts the trial judge erred in "discounting" an affidavit from an expert witness. We agree.

 The admission or exclusion of expert testimony is a matter within the sound discretion of the trial court. *Payton v. Kearse,* 329 S.C. 51, 495 S.E.2d 205 (1998); *Burroughs v. Worsham,* 352 S.C. 382, 574 S.E.2d 215 (Ct.App.2002); *Means v. Gates,* 348 S.C. 161, 558 S.E.2d 921 (Ct.App.2001). A trial court's decision to admit or exclude expert testimony will not be disturbed on appeal absent an abuse of discretion. *Mizell v. Glover,* 351 S.C. 392, 570 S.E.2d 176 (2002); *Fields v. Regional Med. Ctr. Orangeburg,* 354 S.C. 445, 581 S.E.2d 489 (Ct.App.2003); *State v. Grubbs,* 353 S.C. 374, 577 S.E.2d 493 (Ct.App.2003); *Burroughs,* 352 S.C. at 390, 574 S.E.2d at 219. An abuse of discretion occurs when there is an error of law or a factual conclusion that is without evidentiary support. *Fontaine v. Peitz,* 291 S.C. 536, 354 S.E.2d 565 (1987); *Fields,* 354 S.C. at 451, 581 S.E.2d at 492; *Hedgepath v. American Tel. & Tel. Co.,* 348 S.C. 340, 559 S.E.2d 327 (Ct.App.2001); *Bayle v. South Carolina Dep't of Transp.,* 344 S.C. 115, 542 S.E.2d 736 (Ct.App.2001); *see also Zabinski v. Bright Acres Assocs.,* 346 S.C. 580, 553 S.E.2d 110 (2001) (stating that abuse of discretion occurs where trial court is controlled by error of law or

where trial court's order is based on factual conclusions without evidentiary support). A court's ruling on the admissibility of an expert's testimony constitutes an abuse of discretion where the ruling is manifestly arbitrary, unreasonable, or unfair. *Fields,* 354 S.C. at 451, 581 S.E.2d at 492; *Grubbs,* 353 S.C. at 379, 577 S.E.2d at 496; *Means,* 348 S.C. at 166, 558 S.E.2d at 924.

 In order for this Court to reverse a judgment for an alleged error in the exclusion of evidence, the complaining party must prove both the error of the ruling and resulting prejudice. *Fields,* 354 S.C. at 451, 581 S.E.2d at 492; *Means,* 348 S.C. at 166, 558 S.E.2d at 924; *see also Lee v. Suess,* 318 S.C. 283, 457 S.E.2d 344 (1995) (admission of expert testimony is within sound discretion of trial judge and will not be overruled absent finding of abuse of discretion and prejudice to complaining party); *Stevens v. Allen,* 336 S.C. 439, 448, 520 S.E.2d 625, 629 (Ct.App.1999), *aff'd,* 342 S.C. 47, 536 S.E.2d 663 (2000) ("For this Court to reverse a case based on the admission of evidence, both error and prejudice must be shown."); *Potomac Leasing Co. v. Bone,* 294 S.C. 494, 497, 366 S.E.2d 26, 28 (Ct.App.1988) ("Before the Court of Appeals will reverse a judgment for an alleged error in the exclusion of evidence, the appellant must show prejudice.").

 Rule 702, SCRE, articulates guidelines for the admissibility of expert testimony. Rule 702 provides: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. For a court to find a witness competent to testify as an expert, the witness must be better qualified than the fact finder to form an opinion on the particular subject of the testimony. *Mizell,* 351 S.C. at 406, 570 S.E.2d at 183; *Gooding v. St. Francis Xavier Hosp.,* 326 S.C. 248, 487 S.E.2d 596 (1997); *Crawford v. Henderson,* 356 S.C. 389, 589 S.E.2d 204 (Ct.App.2003); *see also Fields,* 354 S.C. at 452, 581 S.E.2d at 492 (to be competent as expert, witness must have acquired, by reason of study or experience, or both, such knowledge and skill in a business, profession, or science that he is better qualified than the fact finder to form an opinion).

■■■ At the summary judgment hearing, Ellis presented an expert affidavit from Gregory Adams, a University of South Carolina law school professor and expert on legal ethics. Adams concluded the Firm "incompetently set up" American and failed to properly advise Ellis about several important matters while forming the company. Adams opined there was an attorney-client relationship between the parties, and that this relationship was subsequently breached by the Firm's actions. Adams noted the Firm engaged in transactions which conflicted with their responsibilities to Ellis and American. The trial judge ruled:

[Adams's] affidavit ... cannot create the requisite factual issue because it is based on factual assumptions about advice provided to Plaintiff Ellis, which assumptions are not supported by the record in this case.... [A]s the record establishes that the only potential legal advice provided to Ellis was with regard to formation of the corporation and obtaining worker's compensation insurance, Dr. Adams' affidavit does not change this Court's conclusion that no attorney-client relationship existed between Ellis and the Defendants that resulted in any damages alleged in this action.

The record supports Adams's conclusions in the affidavit, and, when considered in conjunction with Ellis's testimony, presented a genuine issue of material fact about the questions of breach of fiduciary duty, the existence of an attorney-client relationship, and legal malpractice. As the affidavit was crucial to proving the Firm breached a fiduciary duty in their attorney-client relationship with Ellis and American, Ellis, in his individual and representative capacities, was prejudiced by the court's ruling. *See Hall v. Fedor,* 349 S.C. 169, 561 S.E.2d 654 (Ct.App.2002) (explaining the client in a legal malpractice action must generally establish the standard of care by expert testimony).

The trial judge abused his discretion in failing to give efficacy to the expert witness affidavit. Because this resulted in prejudice to Ellis and American, it was error.

## III. Dismissal of Davis

Ellis argues the trial judge erred in dismissing Kelly Davis from the lawsuit. We disagree.

In the complaint, Ellis and American included Kelly Davis, the surveyor for Absolute, as a party in this action on the grounds of civil conspiracy and conversion. The trial judge granted Davis's motion for summary judgment as to all causes of action raised against him. We agree with the trial judge's ruling on this issue.

## A. Civil Conspiracy

A civil conspiracy consists of three elements: (1) a combination of two or more persons; (2) *for the purpose of injuring the plaintiff;* (3) which causes the plaintiff special damage. *Lawson v. South Carolina Dep't of Corrections,* 340 S.C. 346, 532 S.E.2d 259 (2000); *Robertson v. First Union Nat'l Bank,* 350 S.C. 339, 565 S.E.2d 309 (Ct.App.2002); *Lee v. Chesterfield Gen. Hosp., Inc.,* 289 S.C. 6, 344 S.E.2d 379 (Ct.App.1986). Ellis did not prove Davis engaged in a civil conspiracy with the Firm in order to purposely injure either Ellis or American. We find no genuine issue of material fact exists in the allegations levied against Davis. Ellis proved only that Davis was involved with the Firm in the formation of Absolute, not that he undertook this enterprise for the purpose of injuring either Ellis or American. Because Ellis could not establish the second element of civil conspiracy, the trial judge did not err in granting summary judgment in Davis's favor.

## B. Conversion

Conversion is the unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of the condition or the exclusion of the owner's rights. *Regions Bank v. Schmauch,* 354 S.C. 648, 582 S.E.2d 432 (Ct.App.2003). Davis is not liable for Absolute's alleged conversion of American's property. Absolute is a corporation. Davis may use the disputed equipment but only in his capacity as a surveyor employed by Absolute. Ellis and American have not alleged that Davis personally gained from the property in question. They aver only that Absolute has benefited from it. Even if Davis had believed the property belonged to Ellis or Ameri-

can, he would have had no authority to dispose of it without the approval of the corporation. In the Appellants' brief, Ellis and American assert: "Davis is the responsible party at Absolute." However, Davis is a surveyor for Absolute. He is an employee of the corporation and a minority shareholder. This does not make him personally liable to Ellis and American for property that Absolute, as a corporation, has allegedly converted. The judge properly granted summary judgment to Davis.

## CONCLUSION

Based upon the foregoing, the trial judge's order granting the Firm's motion for partial summary judgment [2] is

**AFFIRMED IN PART, REVERSED IN PART AND RE-MANDED.[3]**

HEARN, C.J., and GOOLSBY, J., concur.

---

**2.** On remand, the Circuit Court will evaluate all issues separately and distinctly in regard to Mark W. Ellis, individually, and American Survey, Inc.

**3.** Ellis alleges the trial judge erred in granting summary judgment while there were outstanding motions and discovery in this case. However, as we are reversing and remanding this case on several issues, we need not reach this one.