1147

Harriet STEELE, Respondent v. VICTORY SAVINGS BANK, Appellant.

(368 S. E. (2d) 91)

Court of Appeals

*H. Ronald Stanley* of *Brown & Stanley*, Columbia, *for appellant.*

*Jerrold M. Hillard* of *Belser, Baker, Barwick, Ravenel, Toal & Bender*, Columbia, *for respondent.*

Heard March 23, 1988.

Decided April 25, 1988.

CURETON, Judge:

Harriet Steele sued Victory Savings Bank for negligence, breach of a fiduciary duty, conversion, fraud, and unfair trade practices resulting from the bank's handling of a cashier's check. The trial court directed a verdict for Steele on her breach of fiduciary duty and conversion causes of actions. The jury returned a verdict for $8,000.00 actual and $4,000.00 punitive damages. The bank appeals. We reverse and remand.

In ruling on Steele's directed verdict motions, the trial court and this court on appeal are required to view the evidence and all reasonable inferences that can be drawn from it in the light most favorable to the bank. *Holmes v. Black River Electric Cooperative, Inc.*, 274 S. C. 252, 262 S. E. (2d) 875 (1980). Viewed in this light, the facts are as follows.

Steele, who lives in Georgia, was approached by James Felder (James), a close social acquaintance, to invest in a certificate of deposit. James, who claimed to be a "solicitor" of business for the bank, convinced Steele he could procure for her a $10,000 certificate of deposit (CD) from the bank that would yield 14 per cent interest over a 6 month term. Steele went to her bank in Georgia and purchased a $10,000 cashier's check payable to Victory Savings Bank (the bank). She gave it to James. The check indicated on its face that the remitter was "Harriet Steele Savings #04082093." According to Steele she instructed James to purchase a CD in her name with the money. Instead, James purchased the CD in his own name and listed her as beneficiary.

A few days after the transaction between James and the bank, Steele called James to inquire about the CD. He indicated there was probably a delay in her receiving the CD. After another elapse of time she called James again. Eventually, James sent her a xerox copy of a CD. The typeface used to type Steele's name, address, and the rate of interest was different from the rest of the type on the xerox of the CD. Additionally, the xeroxed CD did not reflect Steele's social security number.

Steele waited until the CD's maturity date before she contacted the bank. She then learned the CD had been issued in James Felder's name. Steele apparently contacted the U. S. Attorney's office and James was convicted and

sentenced to prison for fraud. Steele received $2,000 from James Felder as part restitution.

The bank's president, Thomas Felder, who is unrelated to James Felder, testified James was a regular customer of the bank. He had known James since 1979 or 1980. He knew James had been disbarred from the practice of law in South Carolina for misappropriation of funds. The bank had in the past sold several CDs to James under similar circumstances. Thomas further testified that when James presented the cashier's check to the bank, he represented the proceeds were his. He further testified that at the time the CD was issued by the bank, James borrowed $10,000 utilizing the CD as collateral for the loan. Finally, Thomas testified there was nothing to indicate to the bank the transaction was unusual so as to put the bank on notice the proceeds of the cashier's check were not owned by James or he was without authority to direct their disposition.

After directing a verdict for Steele on her causes of action for breach of a fiduciary duty and conversion, the trial judge charged the jury only on the law of actual and punitive damages. The bank took exception to the punitive damages charge. Following the jury verdict, the bank moved for: (1) remittitur of the punitive damages; (2) a new trial based on the trial judge's refusal to consider the bank's defenses of contributory negligence and assumption of risk; and (3) a new trial on damages only because the evidence did not support an award of punitive damages. All motions were denied.

In directing a verdict for Steele, the trial judge stated:

> When the bank got the money in the form that it got it in, it had a duty to handle that money in accordance and at the direction of the person who sent them that money and that was Mrs. Steele. And once it breached that duty, it became a fiduciary in effect, when it received that money in that form, it owed Mrs. Steele a duty to only do something with that money that she wanted done with it and when they didn't do that then they breached that duty, and further by doing what they did with it, by giving it to Mr. Felder in the form of a certificate of deposit, at that time they committed a conversion of that money.

We disagree with the trial judge that Steele was entitled to a directed verdict on her breach of fiduciary duty and conversion causes of actions. A "cashier's check" is a bill of exchange or draft drawn by a bank upon itself. The bank is both the drawer and drawee and accepts the check for payment in advance by the very act of issuance. *See* 6 Words and Phrases, "Cashier's Check" (1966); *Bankers Trust v. South Carolina National Bank*, 284 S. C. 238, 325 S. E. (2d) 81 (Ct. App. 1985). "The purchaser is not a party to the cashier's check itself unless named- as payee or unless the purchaser adds his own signature or indorsement to the instrument." H. J. Bailey, *Brady on Bank Checks* Section 1.17 at 1-20 (6th ed. 1987). After issuance, a cashier's check becomes the primary obligation of the bank rather than the purchaser, and the purchaser ordinarily has no authority to countermand payment of the check. *State ex rel. Chan Siew Lai v. Powell*, 536 S. W. (2d) 14 (Mo. 1976).

As pertains to the trial court's finding of a fiduciary relationship, we have been unable to locate any authority which indicates the language Steele placed on the instant check created such a relationship. A "fiduciary relationship" is founded on trust and confidence reposed by one person in the integrity and fidelity of another. It "exists when one imposes a special confidence in another, so that the latter, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one imposing the confidence." *Island Car Wash, Inc. v. Norris*, 292 S. C. 595, 599, 358 S. E. (2d) 150, 152 (Ct. App. 1987). Courts of equity have been careful to not define fiduciary relationships so as to exclude new cases that may give rise to the relationship. *Id.* at 599, 358 S. E. (2d) at 152. To constitute a fiduciary relationship, the relationship must be more than a casual relationship.

By way of illustration, the appellate courts of this state have found fiduciary relationships to exist in the following cases: *Loftis v. Eck*, 288 S. C. 154, 341 S. E. (2d) 641 (Ct. App. 1986) (agent holding power of attorney in fiduciary relationship with his principal); *Lengel v. Tom Jenkins Realty, Inc.* 286 S. C. 515, 334 S. E. (2d) 834 (Ct. App. 1985) (broker was a fiduciary of his client); *Matter of Moore*, 280 S. C. 178,

312 S. E. (2d) 1 (1984) (attorney in fiduciary relationship with his client); *Landvest Assoc. v. Owens*, 276 S. C. 22, 274 S. E. (2d) 433 (1981) (partners were fiduciaries to each other); *Duncan v. Brookview House, Inc.*, 262 S. C. 449, 205 S. E. (2d) 707 (1974) (promoters of a corporation are fiduciaries to each other and to corporation); *Talbot v. James*, 259 S. C. 73, 190 S. E. (2d) 759 (1972) (officers and directors of a corporation stand in fiduciary relationship to shareholders); cf. *Rush v. South Carolina National Bank*, 288 S. C. 560, 343 S. E. (2d) 667 (Ct. App. 1986) (bank and depositor may stand in a fiduciary relationship where bank undertakes to advise depositor as part of services bank offers). On the other hand, no fiduciary relationship between a bank and its depositor has been found where the bank officer was unaware of any special trust reposed in him. *Burwell v. South Carolina National Bank*, 288 S. C. 34, 340 S. E. (2d) 786 (1986).

In the case of *Rush v. South Carolina National Bank, supra*, Wright lived on land owned by Rush and customarily relied on Rush for financial advice. Wright had a savings account at South Carolina National. He asked Rush for advice in managing his savings. Wright and Rush went to SCN. Wright wanted to preserve the account for "major contingency" purposes. This purpose was communicated by Rush to SCN. Thereafter, the account was amended to require both the signatures of Wright and Rush for withdrawal of funds. After the amendment requiring two signatures, Wright made five separate withdrawals totaling $1,800.00 on his sole signature. After Wright's death, Rush sued SCN on behalf of Wright's estate claiming that under the circumstances, there was created and established a fiduciary relationship in which SCN held the funds in trust. In rejecting Rush's contention, this court held that the normal bank-depositor relationship creates a creditor-debtor relationship rather than a fiduciary one. We stated that in "limited circumstances, however, a fiduciary relationship may be created between a bank and a customer if the bank undertakes to advise the customer as a part of the services the bank offers." 288 S. C. at 560, 343 S. E. (2d) at 668. We also stated that to change a general account into a special account, "there must be some act, at least on the part of the depositor, tending to segregate funds in the possession of

the bank and to segregate them for a particular purpose." *Id.* at 560, 343 S. E. (2d) at 668. We concluded the conversation between Rush and the bank was insufficient to create a special purpose account and thus no trust relationship was created between the parties. Even if we were to consider the cashier's check sent by Steele to Victory to be a deposit to her account, the notation on the check would be insufficient under *Rush* to designate it a special purpose account or deposit and thus no fiduciary relationship would develop.

Steele admits that in forwarding the cashier's check to the bank, she dealt with James and not the bank directly. We think there were questions of fact for the jury as to whether James was the agent of Steele, the extent of that agency and whether Steele reposed special confidence and trust in the bank that would give rise to a fiduciary relationship. Moreover, as a general rule, a fiduciary relationship cannot be established by the unilateral action of one party. The other party must have actually accepted or induced the confidence placed in him. 36A C.J.S. *Fiduciary* (1961). The trial judge, therefore, committed reversible error in directing a verdict for Steele based on the breach of a fiduciary duty.

In deciding this issue as we do, we indicate our awareness of the New York case of *Kaiser-Georgetown Community Health Plan, Inc. v. Bankers Trust Company of Albany, N. Y.*, 110 Misc. (2d) 320, 442 N. Y. S. (2d) 48 (1981).[1] Under similar facts, the case held that when a cashier's check is received by a bank and the check names the bank as payee, but the check is not in payment of funds due it, the bank has a duty to inquire of the drawer of the instrument as to the disposition of the funds. The New York case, unlike the case at hand, appears to have been decided on a negligence principle. The opinion notes no factual question existed, as does here, whether the drawer bank would have known the intended purpose of the check.

The bank next argues the trial judge erred in not submitting the issue of conversion to the jury. We agree. Steele supports the ruling of the trial judge by

[1] *Accord,* 10 Am.Jur.2d *Banks* Section 560 (1963); 9 C.J.S. *Banks and Banking* Section 340 (1938).

arguing the bank's act of delivering the proceeds of the cashier's check to James by way of a CD established "misuse" of her property which constituted conversion. She relies upon *Owens v. Andrews Bank & Trust Co.*, 265 S. C. 490, 220 S. E. (2d) 116 (1975). The court in *Owens* stated:

> Conversion has been defined in our case law as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the exclusion of the owner's rights. (citation omitted) Conversion may arise by some illegal use or misuse, or by illegal detention of another's chattel.

*Owens*, 265 S. C. at 496; 220 S. E. (2d) at 119. *Accord Castell v. Stephenson Finance Co.*, 244 S. C. 45, 135 S. E. (2d) 311 (1964). To prevail in a conversion action, Steele must prove either title to or the right to possession of the cashier's check at the time of the alleged conversion. *Causey v. Blanton*, 281 S. C. 163, 314 S. E. (2d) 346 (Ct. App. 1984). Until delivery, the purchaser of a cashier's check retains ownership of the check and is entitled to return it for cancellation. 6B *Michie on Banks and Banking* Chapter 12, Section 13 (1987); H. J. Bailey, *Brady on Bank Checks* Section 1.17 (6th ed. 1987). After delivery, a purchaser ordinarily has no right to direct the disposition of a cashier's check and cannot order its payment stopped. *Santos v. First National State Bank of N. J.*, 186 N. J. Super. 52, 451 A.(2d) 401 (1982). *See State ex. rel. Chan Siew Lai*, 536 S. W. (2d) at 16 (after delivery to payee, a cashier's check could not be countermanded by the purchaser who asserted the payee obtained the check through fraud).

Conversion is a tort and cannot spring from the exercise of a legal right. *General Motors Acceptance Corporation v. Hanahan*, 146 S. C. 257, 143 S. E. 820 (1928). While not absolutely clear, as we understand the law, after delivery, Victory Savings Bank as payee became the legal owner of the cashier's check. Whether or not Steele may sue the bank in tort or equity because it is not entitled to the money is another matter. We hold, however, that under the facts of this case the trial court erred in concluding as a matter of law the acts of the bank amounted to the unlawful assumption and exercise of rights of ownership

over property *belonging to Steele.* Even assuming Steele was the legal owner of the check, after delivery by James to the bank a jury question still existed whether James was the actual or apparent agent of Steele with authority to direct the disposition of the check's proceeds.

Because of our holding above, we need not reach the other issues raised by the bank. Accordingly, the order of the trial court is reversed and the matter remanded for a new trial.

Reversed and remanded.

SHAW and GOOLSBY, JJ., concur.

