**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 16-2001**

In re: INTERNATIONAL PAYMENT GROUP, INC.,

Debtor.

JOHN K. FORT, Chapter 7 Trustee for International Payment Group, Inc.,

Plaintiff – Appellant,

v.

SUNTRUST BANK,

Defendant – Appellee.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg. Bruce H. Hendricks, District Judge. (7:13-cv-01883-BHH)

Argued: March 21, 2018                          Decided: May 30, 2018

Before DUNCAN and AGEE, Circuit Judges, and Leonie M. BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** David Michael DeVito, KAUFMAN, COREN & RESS, P.C., Philadelphia, Pennsylvania, for Appellant. Susan Pedrick McWilliams, NEXSEN PRUET LLC, Columbia, South Carolina, for Appellee. **ON BRIEF:** Steven M. Coren, KAUFMAN, COREN & RESS, P.C., Philadelphia, Pennsylvania; Beattie B. Ashmore, BEATTIE B. ASHMORE, P.A., Greenville, South Carolina, for Appellant. Julio E. Mendoza, Jr., Columbia, South Carolina, Jennifer S. Cluverius, James D. Galyean, Sarah Sloan Batson, NEXSEN PRUET LLC, Greenville, South Carolina, for Appellee.

———————————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Debtor International Payment Group, Inc. ("IPG") filed bankruptcy under Chapter 7 of the United States Bankruptcy Code. 11 U.S.C. ch. 7. IPG's Trustee in bankruptcy, John Fort ("the Trustee"), brought an adversary proceeding against SunTrust Bank ("SunTrust") on behalf of the IPG bankruptcy estate. The Trustee sought damages for negligence, gross negligence, and breach of fiduciary duty by SunTrust. After the bankruptcy court issued proposed findings of fact and conclusions of law, the district court granted summary judgment to SunTrust, and the Trustee appealed.[1] For the reasons below, we affirm the judgment of the district court.

## I.

## A.

From 2005 to 2008, IPG operated as a money service business, facilitating foreign currency transactions, including exchanging foreign currencies and related wire transfers

---

[1] Though the Trustee's claims ordinarily would be treated as "core"—meaning the bankruptcy court has final authority to adjudicate them, 28 U.S.C. § 157(b)—here, the proceedings in the bankruptcy court were proper under its "related-to" jurisdiction. *See Fort v. SunTrust Bank*, No. 7:13-CV-1883-BHH, 2016 WL 4492898, at *2 (D.S.C. Aug. 26, 2016). In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that "some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b)." *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. __, 134 S. Ct. 2165, 2172 (2014). In particular, a bankruptcy court may not resolve claims that do not "stem[ ] from the bankruptcy itself or [will not] necessarily be resolved in the claims allowance process." *Stern*, 564 U.S. at 499. "With the 'core' category no longer available for . . . *Stern* claims" the Court "look[s] to § 157(c)(1) to determine whether the claim[s] may be adjudicated as . . . non-core claim[s]" as "related to" the bankruptcy proceeding. *Arkison*, 134 S. Ct. at 2173. Here, the parties agree that the Trustee's claims are *Stern* claims and that the bankruptcy court properly treated them as "related-to" claims under § 157(c)(1).

3

and drafts. In most transactions, "the customer paid IPG for foreign currency and IPG, in turn, became obligated to pay the customer's beneficiary." J.A. 1009. Most of IPG's customers were travel operators and importers of wine, food, machinery, and furniture.

Beginning in 2005, IPG contracted with SunTrust to facilitate its foreign currency business. SunTrust's Rules and Regulations for Deposit Accounts ("Rules and Regulations") was one of the contractual obligations between the parties and included a provision disclaiming any fiduciary status on the part of SunTrust:

> You acknowledge and agree that the relationship between you and the Bank created by the opening of an Account is of debtor and creditor and that the Bank is not in any way acting as a fiduciary for you or your benefit and that no special relationship exists between you and the Bank.

J.A. 637. The Rules and Regulations also included a "Liability Limitation" provision:

> [SunTrust] shall not be liable for any liability, loss or damage that may arise when we are acting in accordance with applicable laws, regulations, rules, these rules and regulations, or our agreements with any financial institutions regarding the transaction of your business under the Account or by any acts or conditions beyond our control. . . . . We shall only be liable for your damages, as provided in this Section, caused by our gross negligence or wanton and intentional misconduct.

J.A. 663. IPG also agreed that SunTrust could "discontinue or refuse to offer [IPG] any account, service or product at any time." J.A. 658. Another contract, SunTrust's Terms and Conditions for Foreign Exchange, incorporated the Rules and Regulations and likewise authorized SunTrust to disclaim liability for any damages except those "directly caused by the Bank's gross negligence or willful misconduct." J.A. 82.

Based on these and other contracts, SunTrust provided IPG various foreign exchange services, including access to an online foreign exchange system and an online

4

treasury management system (collectively, "online systems"). SunTrust could block IPG from the online systems "at any time, effective immediately, upon written notice." J.A. 832. IPG's chief financial officer and head trader, Eric Pfaff, was IPG's "System Administrator" for the online systems.

SunTrust also performed other services for IPG which were not required by the parties' contracts. For example, SunTrust opened two foreign bank accounts in its own name to aid IPG by more effectively facilitating IPG's foreign transactions. SunTrust also excluded IPG from a bank-wide policy change in 2007 when SunTrust's management otherwise prohibited relationships with money service businesses. IPG and SunTrust's relationship was very profitable to SunTrust.

During their relationship, both SunTrust and IPG suffered management failures. At SunTrust, two foreign exchange department employees embezzled funds between April 2005 and December 2007; however, the theft did not impact IPG. On its part, IPG had poor accounting and oversight practices, which contributed significantly to its financial demise. In January 2008, IPG's President, Clifford Burgess, discovered that Pfaff, who was "responsible for all IPG currency transactions, financial reporting, accounting and recordkeeping," J.A. 1017, had been stealing from IPG. Around January 16, Burgess informed SunTrust that Pfaff had stolen "as much as $1 million or more" from IPG. J.A. 1024. On January 29, Burgess met with SunTrust officials, told them Pfaff may have stolen far more than $1 million, and said he was uncertain whether anyone else was involved in the theft.

5

In light of those unknowns, SunTrust blocked all IPG employees—not just Pfaff—from its online systems by January 30. Though SunTrust did not first alert IPG in writing of the impending exclusion, as the parties' agreement required, a SunTrust manager called Burgess to inform him of SunTrust's action.

SunTrust did not know the extent to which losing system access would affect IPG. Although SunTrust intended that IPG would be unable to execute transactions, once IPG lost access to the online systems it also could not view its transaction history or account data. When SunTrust learned of IPG's inability to access its online transaction history, it helped IPG access, collect, and analyze the historical transaction data in the online systems. In the aftermath of Pfaff's defalcations, IPG collapsed.[2]

### B.

In 2008, IPG filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of South Carolina. In 2010, the Trustee initiated this adversary proceeding against SunTrust, alleging claims including negligence, gross negligence, and breach of fiduciary duty under South Carolina law.[3] Essentially, the Trustee alleged that IPG would not have collapsed had SunTrust not barred all IPG employees from its online systems.

---

[2] It is undisputed that during the time the Trustee claims SunTrust breached duties toward IPG, IPG was prohibited from doing business. *See* J.A. 1026. IPG sent its customers an email on January 31, 2008 stating, "[R]egulators and law enforcement have ordered IPG to stop all transactions until the full extent of the fraud committed by [Pfaff] is determined." J.A. 301.

[3] The Complaint alleged eight counts: negligence and gross negligence (Count I); breach of fiduciary duty (Count II); violation of a South Carolina banking statute, S.C. Code Ann. § 36-4A-204 (Count III); conversion (Count IV); breach of contract and a fraudulent act (Count V); aiding and abetting a breach of fiduciary duty (Count VI); tortious interference with contract (Count VII); and unfair trade practices under South Carolina law (Count VIII). Only Counts I
(Continued)

In the bankruptcy court, SunTrust and the Trustee cross-moved for summary judgment. After considering the Trustee's claims, the bankruptcy court recommended that the district court grant SunTrust's motion except as to the negligence, gross negligence, and breach of fiduciary duty claims. The parties both filed objections with the district court, which adopted the bankruptcy court's factual findings, but rejected its recommendation in part and granted summary judgment to SunTrust on all claims. *Fort v. SunTrust Bank*, No. 7:13-CV-1883-BHH, 2016 WL 4492898 (D.S.C. Aug. 26, 2016).

The Trustee appeals. This Court has jurisdiction under 28 U.S.C. § 1291 to review a district court's ruling on a recommendation from a bankruptcy court. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1009 (4th Cir. 1986).

## II.

We review de novo the district court's grant of summary judgment. *See Hager v. Gibson*, 109 F.3d 201, 207 (4th Cir. 1997). We view the facts in the light most favorable to the nonmoving party. Fed. R. Bankr. P. 7056 (incorporating Federal Rule of Civil Procedure 56 standards). Summary judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a).

---

and II are raised on appeal, and the district court properly treated Count I as two separate claims for negligence and gross negligence. *See Fort*, 2016 WL 4492898, at *4 n.4.

The parties agree that South Carolina law applies to the substantive aspects of the Trustee's claims. *See Butner v. United States*, 440 U.S. 48, 54 (1979); *Tidewater Fin. Co. v. Kinney*, 531 F.3d 312, 318 (4th Cir. 2008) ("[S]tate law determines the rights and obligations of debtors and creditors when the Bankruptcy Code fails to supply a federal rule . . . .").

III.

On appeal, the Trustee contends that SunTrust owed IPG a non-contractual duty of care and fiduciary duties by virtue of their unique relationship. The Trustee argues that SunTrust breached those duties when it expelled IPG from SunTrust's online systems. Like the district court, we find these arguments unpersuasive.

A.

Under South Carolina law, claims for negligence and gross negligence require a duty of care. *Savannah Bank, N.A. v. Stalliard*, 734 S.E.2d 161, 163 (S.C. 2012) ("Negligence is the breach of a duty of care owed to the plaintiff by the defendant."); *Clyburn v. Sumter Cty. Sch. Dist. No. 17*, 451 S.E.2d 885, 887 (S.C. 1994) ("Gross negligence is the intentional, conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do."). Thus, in this case, the Trustee must show that SunTrust owed IPG a non-contractual duty of care in order to succeed on its negligence and gross negligence claims. In South Carolina, "the relationship between a general depositor and his bank is that of creditor and debtor, and money deposited, unless put into a special account or specifically designated to be kept

8

separate, becomes the property of the bank and goes into its general account." *Owens v. Andrews Bank & Trust Co.*, 220 S.E.2d 116, 119 (S.C. 1975). As such, a bank owes general depositors no duty of care unless it is "created by statute, contract, relationship, status, property interest, or some other special circumstance." *Cowburn v. Leventis*, 619 S.E.2d 437, 451 (S.C. Ct. App. 2005) (internal quotation mark omitted).

The Trustee contends that SunTrust made special efforts for IPG that elevated their relationship beyond that of a normal creditor and debtor. In particular, IPG relied heavily on SunTrust's daily accounting and communication; SunTrust exempted IPG from a company policy; SunTrust opened foreign bank accounts to facilitate IPG's business; and the relationship generated hundreds of thousands of dollars for each side. According to the Trustee, offering these non-contractual services imposed a duty of care upon SunTrust, which included the obligations "to exercise due care in accounting for and documenting foreign exchange transactions; . . . to properly supervise its employees in its foreign exchange system; . . . [and] to engage in safe and sound banking practices." 2016 WL 4492898, at *5. The Trustee argues that when SunTrust disconnected IPG's access to SunTrust's online systems and prevented IPG from doing business, SunTrust breached its duty of care.

We disagree. Even viewing the facts in his favor, the Trustee has failed to show that SunTrust owed IPG any non-contractual duty of care for two reasons. First, the Rules and Regulations, to which IPG agreed, disclaim the creation of any duty of care or any "special relationship." J.A. 637. Notwithstanding the Trustee's argument that these

9

"boilerplate" disclaimers should be construed narrowly, these provisions unambiguously prevent IPG from saddling SunTrust with any non-contractual duty of care.

Second, though parties' dealings alone can create a duty of care, *see Armstrong v. Collins*, 621 S.E.2d 368, 377 (S.C. Ct. App. 2005) (looking to "the particulars of the relationship" rather than its label), SunTrust's acts here did not do so as a matter of law. SunTrust provided various banking services to IPG to facilitate IPG's business, but SunTrust did not separate IPG's funds, advise IPG on how to run its business, or perform any roles beyond those expressly contemplated in the contracts. "In sum, [the] Trustee has failed to produce evidence that SunTrust had a duty to continue providing [online] system access, and the Court will not assume the existence of that purported duty." 2016 WL 4492898, at *10.

Even if SunTrust owed IPG a duty of care, the Rules and Regulations expressly limit SunTrust's liability for any breach of that duty. Because SunTrust acted in accordance with its contractual obligations, it cannot be held liable to IPG except for "gross negligence or wanton and intentional misconduct." J.A. 663. SunTrust committed no negligence or intentional misconduct despite its employees' embezzlement, which did not affect IPG's accounts, or by eliminating IPG's online systems access, which IPG agreed SunTrust could do "at any time." J.A. 658. The Trustee contends that SunTrust did not in fact meet its contractual obligations when it curtailed IPG's access without providing written notice. It is undisputed, however, that IPG had actual notice before SunTrust acted, and IPG has failed to show the lack of written notice was prejudicial. Therefore "the failure to provide *written* notice does not constitute a *material* fact." 2016

10

WL 4492898, at *9. The Trustee's remaining allegations rely on acts the parties' contracts in fact permit, and the district court properly entered summary judgment on the negligence and gross negligence claims.

B.

Like negligence claims, a breach of fiduciary duty claim requires a duty. *RFT Mgmt. Co. v. Tinsley & Adams L.L.P.*, 732 S.E.2d 166, 173 (S.C. 2012) ("To establish a claim for breach of fiduciary duty, the plaintiff must prove . . . the existence of a fiduciary duty . . . ."). Under South Carolina law, a bank–customer relationship is generally "not fiduciary in nature." *Regions Bank v. Schmauch*, 582 S.E.2d 432, 444 (S.C. Ct. App. 2003). A bank is not a fiduciary unless it intentionally separates a customer's funds into a special account or "undertakes to advise the customer as part of the services the bank offers." *Rush v. S.C. Nat'l Bank*, 343 S.E.2d 667, 668 (S.C. Ct. App. 1986).

The Trustee offers the same evidence recounted above to support the existence of a fiduciary duty and relies on *Steele v. Victory Savings Bank*, 368 S.E.2d 91 (S.C. Ct. App. 1988), to demonstrate that SunTrust and IPG shared a special relationship. In *Steele*, the plaintiff provided a cashier's check to a friend, who fraudulently purchased a certificate of deposit from the bank in his own name rather than the plaintiff's. *Id.* at 91–92. The plaintiff sued the bank in state court for a breach of fiduciary duty, and the trial court directed a verdict for her on that claim. *Id.* at 92. The Court of Appeals of South Carolina reversed, holding the trial judge improperly directed a verdict because questions of fact existed. *Id.* at 92–94. It was unclear, for example, whether the friend was the

11

bank's agent, a fact crucial to whether the bank induced the plaintiff's trust and thereby created a fiduciary relationship. *Id.* Here, SunTrust agrees with *Steele*'s rule statement, but argues that the case simply does not support the Trustee's position because there was no finding of a fiduciary relationship. We agree that in *Steele*, a fiduciary relationship possibly existed, but that case does not support the Trustee's position that a fiduciary relationship certainly existed here.

For the same reasons that the Trustee's evidence creates no non-contractual duty of care on SunTrust's part, it also fails to transform IPG and SunTrust's debtor–creditor relationship into one of a fiduciary. Courts impose fiduciary duties only in limited circumstances, and this case lacks the unique facts that would allow such an imposition. *See Chapman v. Citizens & S. Nat'l Bank of S.C.*, 395 S.E.2d 446, 451 (S.C. Ct. App. 1990) (requiring the placing of "special confidence" in another); *Steele*, 368 S.E.2d at 93 (listing examples of fiduciary relationships); *Rush*, 343 S.E.2d at 668 (allowing the creation of a fiduciary duty "in limited circumstances," as when a "bank undertakes to advise the customer as a part of the services the bank offers" and separates the customer's funds into a special account). While IPG may have been a unique SunTrust client, "the character of *what* IPG was doing through SunTrust's systems did not differ significantly from the average depositor's relationship with the bank." 2016 WL 4492898, at *15. Moreover, it is clear that SunTrust never accepted a fiduciary role, segregated funds into a special account for IPG, held any funds in trust, or advised IPG about its business.

Even if SunTrust was IPG's fiduciary, it did not breach its fiduciary duties by acting in accordance with the contractual obligations between them. Burgess informed

12

SunTrust of Pfaff's theft around January 16, 2008, yet SunTrust did not immediately block IPG's access to the online systems. SunTrust instead communicated with Burgess and waited two weeks before expelling IPG from its systems in light of Burgess's update that Pfaff stole more than initially thought. Even if the Court were persuaded by the Trustee's argument that a fiduciary relationship arose when SunTrust expelled IPG from its online systems, SunTrust acted within its express contractual authority to cancel any service at any time when it did so. The Trustee has not shown that IPG's account at SunTrust was of such a unique nature as to create a fiduciary relationship. *See Rush*, 343 S.E.2d at 668. Nor has he shown that SunTrust breached any attendant duties in its relationship with IPG. Therefore, the district court did not err in granting summary judgment on the Trustee's breach of fiduciary duty claim.

IV.

Because the Trustee has failed to demonstrate a genuine dispute of material fact on the issue of whether SunTrust owed IPG any non-contractual duties, the judgment of the district court is

*AFFIRMED.*